Argued and submitted September 25, 1985, reversed and remanded April 9, reconsideration denied May 23, petition for review denied July 15, 1986 (301 Or 338)

## STATE OF OREGON,
*Appellant,*

*v.*

## PHILLIP DAVID WEISHAR,
*Respondent.*

(8412 2417c; CA A35899)

717 P2d 231

Terry Ann Leggert, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Douglas W. Moore, Albany, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge Pro Tempore, and Van Hoomissen and Young, Judges.

GILLETTE, P. J., Pro Tempore

## GILLETTE, P. J., Pro Tempore

The state appeals an order suppressing evidence of the results of an intoxilyzer test given to defendant in connection with his arrest and prosecution for driving under the influence of intoxicants (DUII). *Former* ORS 487.540.[1] We reverse.

On the morning of December 2, 1984, defendant, by flashing the headlights of his van, stopped a patrol car driven by Officer Adams of the Albany Police Department. Both cars pulled over to the side of the road, and the drivers got out. Adams said defendant "staggered" toward his car; he also noted what he believed to be other signs of intoxication, including the smell of alcohol and defendant's watery, blood-shot eyes.

Defendant apparently pulled Adams over to talk about various unrelated police matters. During their initial exchange, Adams had difficulty communicating with and understanding defendant. He noticed that defendant was wearing a hearing aid and would become frustrated, hitting his head and pulling the hearing aid off as if to throw it to the ground and step on it. After asking him to perform several field sobriety tests, Adams placed him under arrest for DUII and took him to jail.

At the jail, Adams asked defendant to take an intoxilyzer test. Before the test was administered, Adams and another police employe attempted to inform defendant of information required by *former* ORS 487.805(1)(a) and (b).[2] A form containing the information was read to defendant, but apparently he could not understand the information, because he continually asked questions. Defendant eventually took the form from Adams and read it out loud, although Adams said the recitation was more like "mumbling." Adams did not know what parts of the form defendant read, but assumed that he had read and understood the entire form. He was then administered the intoxilyzer test.

---

[1] *Former* ORS 487.540 was repealed by Or Laws 1983, ch 338, § 978, and replaced by Or Laws 1983, ch 338, § 587, *as amended by* Or Laws 1985, ch 16, § 293 (now ORS 813.010), effective January 1, 1986. Or Laws 1983, ch 338, § 981.

[2] *Former* ORS 487.805(1) was repealed by Or Laws 1983, ch 338, § 978, and replaced by Or Laws 1983, ch 338, § 591, *as amended by* Or Laws 1985, ch 16, § 298; ch 672, § 19 (now ORS 813.100(1)), effective January 1, 1986. Or Laws 1983, ch 338, § 981.

At a pretrial hearing, defendant moved to suppress the results of the test, alleging:

"(1)   The defendant was not advised of his rights as required by ORS 487.805 and 487.810.

"(2)   Said test results were obtained in violation of the defendant's rights to counsel, rights against self incrimination, right to equal protection and due process of law and were obtained as a result of violation of ORS 133.515, and that said test was not voluntary or a product of the defendant's free will, and the defendant did not voluntarily and understandably exercise his rights to refuse the intoxilyzer test or obtain alternative remedies provided by law."

After testimony by the parties and introduction of other evidence, the trial judge issued a memorandum decision:

"As to the inaccuracy of the form used (DMV form 735-75 (6-84)), the Court finds that inaccurate statements in the form did not prejudice the Defendant in relation to his right to seek an independent examination. However, this point is not the crux of Defendant's theory for suppression. It can be summarized as the combined failure of the arresting officer to give the Defendant his Miranda rights (particularly to consult an attorney) or his rights on refusal to take the breath test, and the officer's statutory (ORS 133.515) failure to secure an interpreter to properly communicate those rights to the Defendant. The totality of these improprieties resulted in the obtaining of the intoxilyzer test result, the accuracy of which is not assailed. This is believed to be the 'causal relationship' referred to in *State v. Newton,* 291 Or 788.

"I conclude that because of these improprieties, the intoxilyzer test result must be excluded."

■ ■   A test of a person's breath is non-testimonial in nature and requiring a person to take such a test does not violate the right against self-incrimination. *Heer v Dept. of Motor Vehicles,* 252 Or 455, 461-62, 450 P2d 533 (1969); *State v Medenbach,* 48 Or App 133, 616 P2d 543 (1980). In *Medenbach,* we specifically held that the failure to advise an arrestee of his *Miranda* rights before his submission to a breath test was not a ground for suppression of the results of the test. We reach the same conclusion in this case.

Similarly, we also hold that ORS 133.515(1)[3] is not applicable. Defendant argues that ORS 133.515(1) required the police to obtain the services of a qualified interpreter to provide him with a reasonable opportunity to understand his rights. He asserts that, without an interpreter, his special physical circumstances prevented him from being adequately informed of the necessary information as required by *former* ORS 487.805(1)(a) and (b). We do not agree.

■ Although defendant's hearing impairment brings him within the statutory definition of a "handicapped person,"[4] ORS 133.515(1) only requires the police to obtain the services of an interpreter "before interrogating or taking the statement of the handicapped person." As we have stated above, submission to an intoxilyzer test is non-testimonial; it does not include either interrogation or the taking of a statement. Accordingly, ORS 133.515(1) is not relevant and cannot serve as a basis for suppressing the results of the test.

The state asserts that there is no right to refuse to take an intoxilyzer test. There does not appear to be any dispute regarding that proposition and, in fact, the law clearly supports the state's position. However, defendant argues on appeal that amendments in 1983 to *former* ORS 487.805 changed existing law so that, at the time of his arrest, the police were required to inform an arrestee of the alternative consequences of taking the test and failing, as well as of a refusal, *before* the officer could request submission to the test.

According to defendant, that change reflects an intent by the legislature to promote an "informed choice" by an arrestee on the decision whether to submit to, or refuse to

---

[3] ORS 133.515(1) provides:

"Upon the arrest of a handicapped person and before interrogating or taking the statement of the handicapped person, the arresting peace officer, or when the arrest is by a private person, the officer to whom the handicapped person is delivered, shall make available to the handicapped person, at the earliest possible time, a qualified interpreter to assist the handicapped person throughout the interrogation or taking of a statement."

[4] ORS 133.515(3)(a) provides:

" 'Handicapped person' means a person who cannot readily understand or communicate the English language, or cannot understand the proceedings or a charge made against the person, or is incapable of presenting or assisting in the presentation of a defense, because of deafness, or because of a physical hearing impairment or physical speaking impairment."

take, the test. Defendant then argues that a failure by the police adequately to communicate to an arrestee the statutory information requires suppression of any evidence. The trial court apparently agreed with defendant, holding, *inter alia,* that his hearing impairment and related problems hindered his ability to "understand" the form and its stated advice. Although we agree with defendant's first contention, that an arrestee must now be given certain information before an officer requests submission to the test, we reject his second argument regarding the effect of the 1983 amendments. Neither the nature of the implied consent laws nor the policy behind the legislation support his position.

Oregon's Implied Consent Law has, in the past, been consistently construed to require an explanation of the consequences of refusal to take a requested breath test only *after* an arrestee had actually refused the request of a police officer to submit to the intoxilyzer test. *State v. Newton,* 291 Or 788, 799, 636 P2d 393 (1981); *State v. Scharf,* 288 Or 451, 457-58, 605 P2d 690 (1980); *State v. Osburn,* 13 Or App 92, 508 P2d 837 (1973). It was therefore held that, once an arrestee has complied with an officer's request for a breath sample, "the process is at an end even though the driver may never have been advised of anything." *State v. Newton, supra,* 291 Or at 799.

There has been some disagreement, however, as to whether the legislature intended that the decision to take or refuse the breath test be the result of a "voluntary and informed choice" or merely be a decision either to comply with or to reject the consent legally implied by the statute. In *State v. Scharf, supra,* the defendant was placed under arrest for DUII. After being advised of her rights, she asked the arresting officer if she could phone an attorney. The officer told her that she could call at the police station. Once at the station, she was given a choice to take or refuse a breathalyzer test. She again asked permission to call her attorney before deciding whether to take the test, but her requests were denied. She subsequently took the test, the results of which were later used to convict her.

On appeal, the Supreme Court observed that Oregon's Implied Consent Law calls for the officer to "request" submission to the intoxilyzer test. The court

explained that, if the driver refuses, the officer must explain the consequences of refusal and inform the driver of the right to obtain an independent test. Holding that the right to consult with one's attorney would be consistent "with the legislative decision that the breath test is to be administered only upon the arrested person's voluntary and informed choice," the court reversed the conviction. 288 Or at 461.

Less than two years later, however, the court was presented with similar facts in *State v. Newton, supra.* The court specifically allowed review to address its earlier holding in *Scharf.* The court first noted what it considered to be a conceptual problem:

> "A threshold difficulty in discerning the legislative intent embodied in ORS 487.805 is not simply that the concept of implied consent is a 'statutory fiction,' *Scharf,* 288 Or at 457, but that the fiction appears to be theoretically contradictory. An enigma appears to be at the heart of the law: If, under subsection (1), a driver has impliedly consented to a breath test which, under subsection (2), he may nevertheless refuse, then 'the licensee-driver has not impliedly consented to anything.' * * *

> "The contradiction disappears, however, when it is realized that the words 'consent' and 'refusal' are not used as antonyms, because they are not used in the same sense. 'Consent' describes a legal act; 'refusal' describes a physical reality. By implying consent, the statute removes the *right* of a licensed driver to lawfully refuse, but it cannot remove his or her *physical power* to refuse. As another court put it:

>> " 'The obvious reason for acquiescence in the refusal of such a test by a person who as a matter of law is "deemed to have given his consent" is to avoid the violence which would often attend forcible tests upon recalcitrant inebriates. * * *

>> "* * * * *

>> " '* * * It is firmly established that a drunken driver has no *right* to resist or refuse such a test [citations]. It is simply because such a person has the *physical power* to make the test impractical, and dangerous to himself and those charged with administering it, that it is excused upon an indication of his unwillingness. * * *' *Bush v. Bright,* 264 Cal App 2d 788, 790, 792, 71 Cal Rptr 123 at 124, 125 (1968) (original emphasis).

"Thus refusal as contemplated by the statute is something other than withholding of consent because consent is legally implied. It is a refusal to comply with the consent which has already been given as a condition of a license to drive. The purpose of a warning of license suspension following a refusal is to overcome an unsanctioned refusal by threat instead of force. It is not to reinstate a right to choice, let alone a voluntary and informed choice, but rather to nonforcibly enforce the driver's previous implied consent." 291 Or at 791. (Citations and footnotes omitted; emphasis in original.)

Asserting that the history of implied consent laws supported that description of the statutory language, the court then traced the evolution of implied consent laws generally, with particular attention paid to Oregon's relevant statutes. Concluding that its earlier holding in *Scharf* was unsupported by the history of the legislation, the court held that the legislative history confirmed its conclusion in a still earlier case, *State v. Fogle,* 254 Or 268, 459 P2d 873 (1969), where the court had held that an arrested person's option of refusal under the statute did not imply a requirement of voluntary submission. In *Fogle,* the court had stated:

"While the statute recognizes that a person may refuse to submit to the test, the legislature could hardly have contemplated that it was necessary that there be a completely knowing and understanding submission. If this were the case, the only people who could be tested would be those who were not sufficiently intoxicated to interfere with their mental processes." 254 Or at 270.

The majority in *Newton* then concluded:

"Our description of legislative meaning in *Fogle* was consistent with the history of the statute. The very concept of implied consent in ORS 487.805(1) was intended to eliminate the right of choice and to recognize actual choice only in the sense of a forbearance of physical resistance. *See Bush v. Bright, supra.* Under ORS 487.805(2), the arrested driver must make the initial choice to submit or refuse without the benefit of any information from the police. If anything, this indicates a legislative intent to promote uninformed submission rather than informed choice. The police are obliged to give the arrested driver information only *after* he first 'refuses the request of the police officer to submit to the chemical test' of his breath. Had the legislature been concerned 'with assuring the arrested driver a voluntary and informed choice' as we stated in *Scharf,* 288 Or at 459, it surely would have required

the police to advise the driver *before,* not *after,* the driver first chooses to submit or refuse. If the breath seizure were 'the very stage that the legislature expressly required to be voluntary and informed' as we stated in *Scharf,* 288 Or at 460, the legislature would have required that the information be provided *before,* not *after, drivers provide the evidence by submitting to the officer's initial request."* 291 Or at 799. (Emphasis in original.)

The 1983 Oregon Legislature amended the pertinent statute, *former* ORS 487.805, to provide, in part:

"(1) Any person who operates a motor vehicle upon premises open to the public as defined in ORS 487.535 or the highways of this state shall be deemed to have given consent, subject to ORS 487.805 to 487.835, to a chemical test of the person's breath for the purpose of determining the alcoholic content of the person's blood if the person is arrested for driving a motor vehicle while under the influence of intoxicants in violation of ORS 487.540 or of a municipal ordinance. A test shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving while under the influence of intoxicants in violation of ORS 487.540 or of a municipal ordinance. *Before the test is administered the person requested to take the test shall be informed of:*

"(a) *The consequences, under this section, ORS 482.541, 482.552 and 482.555(3)(b), if the test shows the person has a level of alcohol in the person's blood that constitutes being under the influence of intoxicating liquor under ORS 487.545.*

"(b) *The person's rights under ORS 482.541 and 487.810.*

"(2) No chemical test of the person's breath shall be given, under subsection (1) of this section, to a person under arrest for driving a motor vehicle while under the influence of intoxicants in violation of ORS 487.540 or of a municipal ordinance, if the person refuses the request of a police officer to submit to the chemical test after the person has been informed of:

"(a) The consequences of a refusal under this section, ORS 482.541, 482.552, and 482.555(3)(b); and

"(b) The person's rights under ORS 482.541 and 487.810 * * *." (Emphasis supplied.)

The italicized portions were added by the 1983 amendments and went into effect on July 1, 1984. Therefore,

the statutory language at the time when defendant was arrested did require an arresting officer to inform an arrestee of the alternative consequences both of taking the intoxilyzer test and failing, as well as of refusing to take the test, *before* the arrestee makes a decision either way.[5] The question remains, however: Did the legislature, by its change in the statutory language, intend that the warnings be understood and the test results, if any, be admissible only when an arrestee understood the warnings? That is, did the legislature intend to require that the decision to take the test be a "voluntary and informed choice?" Although the changes created the very statutory scheme envisioned by the majority in *State v. Newton, supra,* we do not agree with defendant that they require a "voluntary and informed choice" on the decision to take or refuse the test.

As *State v. Newton, supra,* explains, there is neither a "right" to refuse a breath test nor a requirement that an arrestee understand the information contained in the form. The legislature has never lost track of that fact. Since its inception, Oregon's implied consent statute has contained various sanctions designed to coerce submission to a breath test. Subsequent legislative sessions have seen new efforts to stiffen the penalties connected to the problems which arise in

---

[5] The current version of *former* ORS 487.805, ORS 813.100, now provides, in pertinent part:

"(1) Any person who operates a motor vehicle upon premises open to the public or the highways of this state shall be deemed to have given consent, subject to the implied consent law, to a chemical test of the person's breath for the purpose of determining the alcoholic content of the person's blood if the person is arrested for driving a motor vehicle while under the influence of intoxicants in violation of ORS 813.010 or of a municipal ordinance. A test shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving while under the influence of intoxicants in violation of ORS 813.010 or of a municipal ordinance. Before the test is administered the person requested to take the test shall be informed of consequences and rights as described under ORS 813.130.

"(2) No chemical test of the person's breath shall be given, under subsection (1) of this section, to a person under arrest for driving a motor vehicle while under the influence of intoxicants in violation of ORS 813.010 or of a municipal ordinance, if the person refuses the request of a police officer to submit to the chemical test after the person has been informed of consequences and rights as described under ORS 813.130."

ORS 813.130 "establishes the requirements for information about rights and consequences" and represents a consolidation of former statutory sections containing the information required to be conveyed to an arrestee.

the arrest and conviction of drinking drivers. Committee minutes from the 1983 legislative session disclose a determination to toughen the DUII statutes. In addition to increasing the severity of penalties for refusing the breath test, serious penalties were instituted for the first time for arrestees who took and failed the test; *see former* ORS 487.805(3); Minutes, Senate Judiciary Committee, April 27, 1983, p 7. It is therefore logical to assume that the legislature, in adding sanctions for taking and failing the test, felt it necessary to amend the statute so that *all* arrestees, not only those who refused to take the test, were informed of the respective sanctions beforehand. That purpose does not, however, require that defendant *understand* what he has been told, any more than did the language construed in *State v. Newton, supra.*

Here, Adams attempted to read the information on the form to defendant and to answer to the best of his ability any questions which defendant had regarding that information. Despite Adams' efforts, defendant eventually took the form and read it himself, again with assistance from Adams. We agree with the Supreme Court's pronouncement in *State v. Fogle, supra,* 254 Or at 270, that "the legislature could hardly have contemplated that it was necessary that there be a completely knowing and understanding submission" to the breath test. Adams performed his statutory duty and informed defendant of the necessary information pursuant to *former* ORS 487.805. That is all the law required. It was error for the trial court to suppress the results of defendant's breath test.

Reversed and remanded for trial.[6]

---

[6] Defendant also raises several objections based on the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and the Privileges and Immunities Clause, Article I, section 20, of the Oregon Constitution. The objections are not well taken.