615 A.2d 102

**COMMONWEALTH of Pennsylvania**

v.

**Rodney L. MORDAN, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 7, 1992.

Filed Oct. 21, 1992.

Petition for Allowance of Appeal Granted
Feb. 17, 1993.

Stephen S. Pennington, Philadelphia, for appellant.

Mary M. Killinger, Executive Asst. Dist. Atty., Norristown, for Com., appellee.

Before CIRILLO, TAMILIA and FORD ELLIOTT, JJ.

FORD ELLIOTT, Judge.

Rodney Mordan, a deaf mute, was found guilty following a bench trial of driving under the influence of alcohol in violation of 75 Pa.C.S.A. § 3731. On appeal, three issues are raised for our review: (1) whether a deaf mute has the right to a sign language interpreter upon arrest for driving under the influence so that the statutory right to refuse the test may be exercised; (2) whether the violation of the right to a language interpreter requires the suppression of the breathalyzer test results; and (3) whether admission of the breathalyzer test result into evidence was harmless error. We hold that a deaf motorist is not entitled to a sign language interpreter prior to submission to a breathalyzer test so that defendant can make an informed choice as to whether to take the test, and that the breathalyzer results will not be suppressed because the services of an interpreter were not provided before the motorist submitted to the test.

On November 18, 1989, at about 11:20 p.m., Officer James Crawford of the Lower Providence Township Police Department observed appellant driving west on Egypt Road in Lower Providence Township, Montgomery County, and following three to five feet behind another vehicle. As the officer attempted to stop the vehicle, he observed that it went up and over a curb before stopping.

When the officer approached Mordan's vehicle, on the driver's side, he smelled alcohol on the appellant's breath and observed that his eyes were blood shot. The officer also saw a twelve-pack of beer from which several cans were missing on the floor of the passenger side of the vehicle.[1]

When the officer requested that appellant produce his driver's license, the officer noticed appellant pointing to the address on the license and making noise as if he was trying to speak; he also motioned for something to write upon. The officer realized that appellant was deaf and mute. The officer gave appellant a notepad upon which to write. The officer then communicated to appellant in writing to inform him of the reason for the stop, to request his registration and insurance card, and to instruct him on performing the field sobriety tests. The officer also physically demonstrated the sobriety tests. Appellant produced the registration and insurance cards and performed the sobriety tests which he failed.

Officer Crawford placed appellant under arrest and informed appellant in writing that he would be taken to the West Norriton Police Department for a breath test. At the station, appellant was informed both orally and in writing that if he refused to take the breathalyzer test he would lose his license for one year. Mordan submitted to the breathalyzer test and registered a .13 and .14 on two successive tests.

At the hearing on the motion to suppress, the trial court determined as a fact that appellant did not understand that he could have refused to submit to the breathalyzer tests because he could not read lips and could not read well enough to have understood that he could have refused to take the breathalyzer.

1. There is no question presented under the instant facts that the officer had sufficient probable cause under 75 Pa.C.S.A. 1547 to believe that appellant was operating his vehicle under the influence of alcohol. *See Commonwealth v. Sharon Louise Danforth*, 395 Pa.Super. 1, 576 A.2d 1013, *appeal granted*, 526 Pa. 647, 585 A.2d 467 (1990); *Commonwealth v. Kohl*, 395 Pa.Super. 73, 576 A.2d 1049, *appeal granted*, 526 Pa. 630, 584 A.2d 313 (1990). On September 16, 1992, both cases were affirmed by the supreme court in one opinion at Nos. 183 and 188 Eastern District Appeal Docket 1990 and No. 11 Eastern District Appeal Docket 1991 respectively.

The suppression motion was denied and appellant was found guilty during a bench trial of driving under the influence. Appellant filed a motion for a new trial and in arrest of judgment. Following arguments on the motion before a court en banc consisting of the Honorable William W. Vogel, P.J., and the Honorable William H. Yohn, appellant's motions were denied. Appellant then timely filed this appeal.

The first issue raised by appellant is one of first impression in this Commonwealth. Appellant frames the issue as whether a deaf individual has the right to an interpreter so that he may communicate with a police officer for the purpose of exercising his statutory right to refuse a breathalyzer test and to be advised of the consequences of a refusal. Appellant argues that a deaf person has a right to a sign language interpreter so that he can meaningfully participate in proceedings which are available to hearing persons.

Section 1547 of the Vehicle Code states, in part:

(a) General rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both;

.     .     .     .     .

(b) Suspension for refusal.—

(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

75 Pa.C.S.A. § 1547(a), (b).

"[A]s a condition of maintaining a driver's license in this Commonwealth, all drivers are subject to the implied consent requirements of the Motor Vehicle Code and must submit to blood and breath tests under appropriate circumstances." *Commonwealth v. O'Connell,* 521 Pa. 242, 251, 555 A.2d 873, 877 (1989). Where an officer has reasonable grounds to believe that a motorist is driving while under the influence of alcohol, the driver may properly be requested to submit to a chemical test of blood, breath or urine to determine the alcoholic content of the blood. *Commonwealth v. McFarren,* 514 Pa. 411, 525 A.2d 1185 (1987). When appellant was granted the privilege to drive upon Pennsylvania roadways, he agreed to submit to chemical testing in the event that a police officer had reasonable grounds to request such a test by implied consent. Section (b)(1) of 1547, however, permits a motorist to refuse a chemical test, thereby revoking implied consent to submit to the test. It is well established that no constitutional right to refuse testing exists. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In *Commonwealth v. Hipp,* 380 Pa.Super. 345, 551 A.2d 1086 (1988), this court stated:

> While the legislature has provided by statute that a driver, whom the police have probable cause to believe has been operating a vehicle while under the influence of alcohol, may refuse to submit to a chemical test for blood alcohol content, this right of refusal is not a constitutional right but rather is created solely by operation of the statute. 'Neither the Fourth Amendment bar against unreasonable searches and seizures nor Fifth Amendment privilege against self-incrimination prevents the Commonwealth from requiring that a driver submit to a breathalyzer test. A driver therefore does not have a constitutional right to refuse. He has no right to refuse other than as provided in the implied consent law. Neither the Fourth nor Fifth

Amendments prevents the admission into evidence of test results or of refusal.... A driver has no right to have evidence either of the test results or of the refusal excluded ....'

*Id.*, 380 Pa.Super. at 359, 551 A.2d at 1092–1093 (citations omitted).[2]

▪ Instantly, the evidence presented reveals that appellant drove his vehicle over a curb before stopping, the officer smelled alcohol on appellant's breath, and observed that appellant's eyes were red, empty beer cans were visible inside the vehicle and appellant failed the sobriety tests. We are satisfied that the Commonwealth met its burden under 75 Pa. C.S.A. § 1547(a)(1) to show that the officer had reasonable grounds to believe that appellant was driving under the influence of alcohol; hence, where an officer reasonably believed that appellant was driving under the influence, appellant, like any other motorist, shall be deemed to have given consent to at least one test of blood, breath or urine for the purpose of determining the alcoholic content of the person's blood. *See Commonwealth v. Smith,* 382 Pa.Super. 288, 555 A.2d 185, *appeal denied,* 524 Pa. 607, 569 A.2d 1366 (1989) (Section 1547(a)(1) of the Vehicle Code permits a chemical test of a suspect's blood, without the suspect's consent, if the officer has reasonable grounds to believe that the suspect was driving under the influence of alcohol).

▪ Appellant concedes that informed consent is not required under Section 1547; nevertheless, he argues that an interpreter should have been provided so that he could exer-

2. We note, however, that in *Commonwealth v. Eisenhart,* 531 Pa. 103, 611 A.2d 681 (1992), our supreme court stated that

[b]ecause his consent is implied until the person actually refuses, under subsection (a) of Section 1547, his actual consent would be no different from his remaining silent. Thus, under the Implied Consent provision, Section 1547(a), testing is allowed absent an affirmative showing of the subject's refusal to consent to the test at the time that the testing is administered. Moreover, his initial consent does not preclude him from revoking his consent to the test. The statute grants an explicit right to a driver who is under arrest for driving under the influence to refuse to consent to chemical testing.

The court concluded that where chemical testing is performed after a driver has revoked his implied consent, the test result must be suppressed because it was taken unlawfully.

cise his statutory right to refuse the test and be informed of the consequences of a refusal. Appellant further contends that it is the law in Pennsylvania that a deaf person has a right to an interpreter during an interrogation and criminal proceedings. The statute states:

(a) Interrogation.—Upon the arrest of any deaf person, and prior to interrogation, the arresting officer shall make available to such person an interpreter who shall be present with such person throughout the interrogation.

(b) Criminal proceeding.—In any criminal proceeding in which a defendant is deaf the court shall appoint an interpreter to assist the defendant throughout the proceeding.

42 Pa.C.S.A. § 8701(a), (b). Participation in a breathalyzer test is not the equivalent of an interrogation, nor is it a criminal proceeding. During an interrogation, the objective is to obtain incriminating statements. "Requiring a driver to perform physical tests or to take a breath analysis test does not violate the privilege against self-incrimination because the evidence procured is of a physical nature rather than testimonial, and therefore, no *Miranda*[3] warnings are required." *Commonwealth v. Benson*, 280 Pa.Super. 20, 421 A.2d 383, 387 (1980).[4] If the result of a breathalyzer was considered testimonial evidence or an incriminating statement, then *Miranda* warnings would be required before the test was administered. Moreover, submission to a breathalyzer is not considered a criminal proceeding. The implied consent law codified at section 1547 of the Vehicle Code is not penal in nature and is designed to protect the public by providing an effective means of denying intoxicated motorists the privilege of using the

**3.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** Our supreme court recently stated in *Commonwealth v. John Martin Danforth* (1990) 530 Pa. 327, 608 A.2d 1044 (1992), that "[w]hen *Miranda* warnings are followed by a police request for chemical testing, the police have an affirmative duty to not only *inform* the arrestee that refusal to submit to chemical testing will result in suspension of his driving privileges, but also that the arrestee does not have a right to speak with an attorney *or anyone else* in connection with his decision as to whether he will submit to chemical testing."

roads. *Commonwealth v. Hill,* 379 Pa.Super. 34, 549 A.2d 583 (1988), *allocatur denied,* 521 Pa. 618, 557 A.2d 721 (1989); *Hando v. Commonwealth,* 84 Pa.Cmwlth. 63, 478 A.2d 932 (1984). The driver's license suspension proceeding by the Department of Transportation for a refusal to take a breathalyzer test is an independent civil proceeding separate and distinct from any criminal charges brought against a motorist. *Hando, supra.* Although the results of the breathalyzer test may be used in a criminal proceeding against appellant, the breathalyzer, itself, is not a criminal proceeding.[5] Since a breathalyzer test is not considered an interrogation or a criminal proceeding within the meaning of 42 Pa.C.S.A. § 8701, we cannot hold that deaf persons have a constitutionally protected liberty interest to an interpreter before exercising a refusal to submit to a breathalyzer test.[6]

5. A criminal proceeding is defined as "[o]ne instituted and conducted for the purpose either of preventing the commission of crime, or for fixing the guilt of a crime already committed and punishing the offender; as distinguished from a 'civil' proceeding, which is for the redress of a private injury. Strictly, a 'criminal proceeding' means some step taken before a court against some person or persons charged with some violation of the criminal laws." *Black's Law Dictionary* (5th ed. 1979).

6. Appellant also cites a number of federal cases to support his contention that deaf individuals have a constitutionally protected liberty interest in any activity which requires their participation, therefore, they must be provided with an interpreter to ensure meaningful access: *Bonner v. Arizona Dept. of Corrections,* 714 F.Supp. 420 (D.Ariz.1989); *Jones v. Illinois Dept. of Rehabilitation Services,* 689 F.2d 724 (1982); *Camenisch v. University of Texas,* 616 F.2d 127 (5th Cir.1980), *vacated and remanded on other grounds,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *Barnes v. Converse College,* 436 F.Supp. 635 (M.D.N.C.1977); *DeFalco by DeFalco v. Deer Lake School Dist.,* 663 F.Supp. 1108 (W.D.Pa.1987). In the aforementioned cases, the plaintiffs relied upon section 504 of the Rehabilitation Act (the "Act") or established that a cognizable liberty interest had been denied without due process of law. The elements of a cause of action under the Act are that plaintiff is a handicapped person, that plaintiff is otherwise qualified for participation in the program, that plaintiff is being excluded from participation in, denied the benefits of, or subjected to discrimination under the program solely because of his handicap, and that relevant program or activity is receiving federal funds. *Doherty v. Southern College of Optometry,* C.A.6 (Tenn.), 862 F.2d 570 (1988). Appellant has failed to establish that a breathalyzer test is a "program or activity" within the meaning of the Act and that the discrimination occurred under a specific program that received federal funds, nor has appellant demonstrated that the administration of a breathalyzer test to

■ Instantly, the trial court aptly rephrased the issue as whether any driver to whom implied consent applies must knowingly decline to exercise his statutory right to refuse to submit to the breathalyzer, or are breathalyzer tests results inadmissible in cases where the driver's submission was not a knowing one? Responding to this question in the negative, the trial court commented:

> We recognize that if Mr. Mordan had refused to take the breathalyzer test, his driver's license could not be suspended since he would not have understood the consequences. Defendant, however, attempts to extend the knowing requirement in the situation where a defendant refuses to take the breathalyzer test and then contests the automatic license suspension to the situation wherein a defendant submits to the breathalyzer and then contests the validity of the implied consent. These two situations are entirely different since, as previously mentioned, the statute does not require an informed consent although it does require an informed refusal....
>
> .... The Pennsylvania legislature did not intend that there be a knowing submission to the breathalyzer test by virtue of its reference to the possibility of refusal in its implied consent law of section 1547 of the Motor Vehicle Code.

Trial court opinion, 5/1/91 at 13–14. We agree. Section 1547 of the Vehicle Code does not require that a motorist's consent to the breathalyzer test be informed, it only mandates that appellant be warned that a refusal would result in the revocation of the driver's license. *See Commonwealth v. Gaertner*, 138 Pa.Commwlth.Ct. 423, 589 A.2d 272 (1991) (the Commonwealth Court held that the *refusal* of a deaf motorist to submit to chemical testing for driving under the influence was not the product of a knowing and conscious decision).

Without precedent directly on point to guide its decision, the learned trial court ventured outside Pennsylvania jurisprudence and found the rationale persuasive in the Oregon appel-

a deaf person without the services of an interpreter infringed upon a protected liberty interest. In any event, a suppression hearing is a criminal proceeding and the Rehabilitation Act which is civil in nature would not provide appellant any relief.

late court case *State v. Weishar,* 78 Or.App. 468, 717 P.2d 231, *review denied,* 301 Or. 338, 722 P.2d 737 (1986). In *Weishar,* a hearing impaired motorist was arrested after exhibiting signs of intoxication and failing field sobriety tests. Weishar wore a hearing aid. At the jail, the officer asked Weishar to take an intoxilyzer test. Before the test was administered, the officer and another police employee attempted to inform Weishar of information required by Oregon's former implied consent law, which was in effect at the time of his arrest, by reading a form to Weishar containing the information.[7] At a pretrial hearing, Weishar moved to have the results of the intoxilyzer suppressed alleging that the officers violated a law requiring them to obtain the services of interpreter for handicapped persons prior to any interrogation or the taking of a statement. The results were suppressed because, among other things, the suppression court concluded that Weishar had not been informed of his right to refuse to take the breath test and the officer failed to secure an interpreter to properly communicate to Weishar his rights.

On appeal, the Oregon appeals court reversed and held that the law requiring the police to obtain the services of an interpreter to provide Weishar a reasonable opportunity to understand his rights was not applicable to the case, despite his argument that his special physical circumstances prevented him from being adequately informed of the information required by the former implied consent law. The court reasoned that even though Weishar fit within the definition of a handicapped person, the law only requires the police to obtain an interpreter before an interrogation or the taking of a statement. Since the submission to an intoxilyzer test is nontestimonial, it does not include interrogation nor does it involve taking a statement. In our case, appellant made a similar argument which we rejected for analogous reasons.

7.  Under the 1983 amendments to Oregon's former implied consent law, the arresting officer was required to inform an arrestee of the alternative consequences both of taking the breath test and failing, and the consequences of refusing the test, before the arrestee makes a decision either way.

Reviewing the history of cases interpreting that state's implied consent law, the Oregon appellate court in *Weishar* further opined:

A threshold difficulty in discerning the legislative intent embodied in ORS 487.805 [Oregon's implied consent law] is not simply that the concept of implied consent is a 'statutory fiction,' [*State v.*] *Scharf*, 288 Or [451] at 457 [605 P.2d 690], but that the fiction appears to be theoretically contradictory. An enigma appears to be at the heart of the law: If, under subsection (1), a driver has impliedly consented to a breath test which, under subsection (2), he may nevertheless refuse, then 'the licensee-driver has not impliedly consented to anything.' . . .

The contradiction disappears, however, when it is realized that the words 'consent' And 'refusal' are not used as antonyms, because they are not used in the same sense. 'Consent' describes a legal act; 'refusal' Describes a physical reality. By implying consent, the statute removes the *right* of a licensed driver to lawfully refuse, but it cannot remove his or her *physical power* to refuse. As another court put it:

The obvious reason for acquiescence in the refusal of such a test by a person who as a matter of law is 'deemed to have given consent' is to avoid the violence which would often attend forcible tests upon recalcitrant inebriates. . . .

. . . .

'. . . it is firmly established that a drunken driver has no right to resist or refuse such a test [citations]. It is simply because such a person has the physical power to make the test impractical, and dangerous to himself and those charged with administering it, that it is excused upon an indication of his unwillingness. * * *' *Bush v. Bright*, 264 Cal.App.2d 788, 790, 792, 71 Cal.Rptr. 123 at 124, 125 (1968) (original emphasis).

'Thus refusal as contemplated by the statute is something other than withholding of consent because consent is legally implied. It is a refusal to comply with the consent which

has already been given as a condition of a license to drive. The purpose of a warning of license suspension following a refusal is to overcome an unsanctioned refusal by threat instead of force. It is not to reinstate a right to choice, let alone a voluntary and informed choice, but rather to nonforcibly enforce the driver's previous implied consent.' [*State v. Newton,*] 291 Or. [788] At 791, 636 P.2d 393.

*Weishar,* 717 P.2d at 234, 235 (citations and footnotes omitted; emphasis in original).

The *Weishar* court also relied upon the rationale of an earlier Oregon Supreme court case wherein it stated:

'While the statute recognizes that a person may refuse to submit to the test, the legislature could hardly have contemplated that it was necessary that there be a completely knowing and understanding submission. If this were the case, the only people who could be tested would be those who were not sufficiently intoxicated to interfere with their mental processes.' [*State v. Fogle* ], 254 Or. 268, 270, 459 P.2d 873 (1969).

*Weishar,* 717 P.2d at 235.

The court, in *Weishar,* concluded that the officer attempted to convey to Weishar the information provided on the form regarding the implied consent law. The law, however, did not require that a defendant make a completely knowing and understanding submission to the breath test, and the officer performed his statutory duty and informed Weishar of the necessary information pursuant to the Oregon implied consent law which is all that the law requires. Therefore, the trial court had erred in suppressing the results of Weishar's intoxilyzer test.

█ We find the reasoning set forth in the *Weishar* opinion to be especially instructive and pertinent to the resolution of the case *sub judice.* The implied consent law contained in Section 1547 of the Vehicle Code states that "[i]t shall be the duty of the police officer to *inform* the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing." 75 Pa.C.S.A. 1547(b)(2). The

implied consent law imposes the duty upon the officer only to apprise the motorist of the *consequences* of a refusal to take the breath test. No where does the law require the officer to make certain that the motorist understands that he could exercise a right to refuse a breathalyzer test when he consents to the test. Appellant has a right to a knowing and conscious refusal before his license is suspended, but not a right to a knowing and conscious submission to the breath test. Here we are concerned only with whether the results of the blood tests may be admitted.

Since we have determined that appellant did not have a right to a sign language interpreter so that he could make a knowing submission to the breathalyzer test, or so that he could understand that he had a right to refuse the breathalyzer test, appellant's remaining claims that the test result should be suppressed, and whether the admission of the test result into evidence was error, do not require separate analysis.

Therefore, we affirm judgment of sentence.