STATE of Wisconsin, Plaintiff-Appellant,

v.

Michael S. PIDDINGTON, Defendant-Respondent.†

Court of Appeals

*No. 99–1250–CR. Submitted on briefs October 8, 1999.—Decided January 27, 2000.*

## 2000 WI App 44

(Also reported in 607 N.W.2d 303.)

†Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jason J. Hanson*, assistant district attorney, Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michele A. Tjader* of *Kalal & Associates*, Madison.

Before Dykman, P.J., Roggensack and Deininger, JJ.

¶ 1. DEININGER, J. The State appeals an order suppressing the results of a blood test for alcohol concentration to which Michael Piddington submitted after his arrest for operating a motor vehicle while under the influence of an intoxicant (OMVWI). The trial court ordered the test results suppressed after concluding that Piddington, who is hearing impaired, "needed an American Sign Language interpreter to really understand the information he was being given" under WIS. STAT. § 343.305(4) (1995–96).[1] The State argues that the arresting officer complied with the informed consent law when he orally informed Piddington of the matters required by the statute. We

---

[1] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

agree and therefore reverse the order suppressing evidence.

## BACKGROUND

¶ 2. A Wisconsin State Trooper observed Piddington's vehicle speeding and weaving within its traffic lane at about one o'clock in the morning. After stopping the vehicle, the trooper detected an odor of alcohol and noted that Piddington's eyes appeared "glassy." The trooper also determined from Piddington's speech and gestures, and from a passenger in the vehicle, that Piddington was hearing impaired. The passenger initially assisted the trooper in communicating with Piddington, but most of the subsequent communication between the two was accomplished by writing notes back and forth on the trooper's note pad.

¶ 3. Piddington and his passenger acknowledged that they had been drinking at a tavern. The trooper requested Piddington to perform field sobriety tests. Before doing so, the trooper requested his dispatcher to check with the City of Madison Police Department and the Dane County Sheriff's Department to see "if there were any officers available that would be able to assist with sign language," inasmuch as the trooper had obtained such assistance in the past. Through a combination of verbal and written directions, gestures, and physical demonstrations, the trooper instructed Piddington on how to perform the horizontal gaze nystagmus and "walk-and-turn" tests. The trooper determined that Piddington's performance on these tests yielded sufficient "clues" of intoxication to merit a preliminary breath test (PBT), even after making allowances for possible misunderstandings occasioned by Piddington's impaired hearing. The PBT yielded a

result of .27, and the trooper arrested Piddington for OMVWI.

¶ 4. Initially, the trooper was going to take Piddington to his patrol district headquarters for a breath test, but Piddington requested in a written note to have a blood test. The trooper thus proceeded to a Madison hospital for the drawing of a blood sample and was met there by a City of Madison police officer who had "conversational" abilities in "sign language." After the trooper and the Madison officer went over the "Informing the Accused" form with him, Piddington agreed to give a blood sample for alcohol concentration testing. Piddington moved the trial court to suppress the results of the blood test because, among other reasons, the arresting officer "failed to adequately orally inform" him of the matters specified in WIS. STAT. § 343.305(4).

¶ 5. At the hearing on Piddington's motions to suppress the results of the blood test, the trooper testified that the Madison officer both read the "Informing the Accused" form to Piddington and told him to read each paragraph, with an instruction to initial each paragraph "only if he understood." The Madison officer testified as follows:

> I asked if [Piddington] could read. He indicated he was a graduate from LaFollette High School and could read.
>
> So I had him read this form and asked at each paragraph if he understood what the form or paragraph read. When he did indicate that he understood, then he would initial next to the paragraph stating that he understood that form.
>
> Q How are you communicating with him?

A Initially, it started to be some sign. But we were able to communicate with his voice and him reading my lips.

The officer acknowledged that she was "[n]ot at all" fluent in American Sign Language, but was able to "sign certain sentences and get information across that's pertinent to my job. . . ." Finally, she testified that she also read Piddington the "Informing the Accused" form, having concluded that Piddington could read lips; that Piddington gave "appropriate verbal responses" to her verbal communications; and that he did not indicate "at any time" that he did not understand the "Informing the Accused" form.

¶ 6. Piddington testified at the hearing through an American Sign Language interpreter. He explained that he was profoundly deaf and that American Sign Language was "the primary way" that he communicated. He claimed that he did not fully understand the trooper's instructions during field sobriety testing, and that he also had difficulty communicating with the Madison officer when she went over the "Informing the Accused" form with him.

¶ 7. The trial court concluded that the trooper had probable cause to arrest Piddington for OMVWI and thus denied Piddington's motion alleging that the arrest was unlawful. However, the court granted Piddington's motion to suppress the blood test results for the following reason: "Because of the communication problems due to the defendant's hearing impairment[,] the state has not met its burden with respect to informing the defendant of his right to an alternative test and with respect to the Informing the Accused form." Although the court noted that "the attempts of law enforcement to communicate with [Piddington] were reasonable under all the circumstances, perhaps even

exemplary," it found as a fact that Piddington "needed an American Sign Language interpreter to really understand the information he was being given. . . ." The court also suppressed statements Piddington made following his arrest. The State appeals the order suppressing evidence.[2]

## ANALYSIS

¶ 8. The State's principal argument on appeal is that a law enforcement officer need only "read the 'Informing the Accused' form to an arrested person" in order to fully comply with the provisions of WIS. STAT. § 343.305(4). Piddington claims, however, that the State may not make that argument in this court because it was not made, or "even hinted at," in the trial court. Piddington cites our statements in *State v. Rogers*, 196 Wis. 2d 817, 827, 829, 539 N.W.2d 897 (Ct. App. 1995), that "[w]e will not . . . blindside trial courts with reversals based on theories which did not originate in their forum," and that "the appellant [must] articulate each of its theories to the trial court to preserve its right to appeal." We agree with the cited propositions, but we conclude that the State is not precluded on this record from making the argument it advances on appeal.

¶ 9. At the conclusion of the suppression hearing, the trial court opted for oral argument from the parties in lieu of written briefs. Piddington's counsel argued first, analogizing the requirements of WIS. STAT. § 343.305(4) to *Miranda* warnings,[3] and asserting that Piddington had a due process/fundamental fairness right to receive the statutory information in a fashion

---

[2] *See* WIS. STAT. § 974.05(1)(d)2.

[3] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

that he could "adequately understand." Defense counsel also argued that Wisconsin State Patrol policies and procedures, as well as the Americans with Disabilities Act, required that Piddington be furnished with an interpreter skilled in American Sign Language before the trooper asked him to submit to a chemical test for alcohol concentration.

¶ 10. The State responded, first, that the evidence at the hearing was sufficient to show that Piddington *did* understand the substance of what was communicated to him by the arresting trooper and the Madison officer. Next, however, the prosecutor told the court:

> In perhaps an extreme attempt to follow the letter of Section 343.305, the Implied Consent Law, [the trooper] insisted on orally informing Mr. Piddington of his rights, which is by the words of the statute what the statute calls for.

The prosecutor went on to argue that the implied consent law was "intended to facilitate the taking of tests for intoxication, and *not* to inhibit the ability of the state to remove drunken drivers from the highway." *See Scales v. State*, 64 Wis. 2d 485, 494, 219 N.W.2d 286 (1974) (emphasis added). Finally, the prosecutor asserted that Piddington's claim that the "Implied Consent Law does not apply to him unless the state is able to facilitate him with an interpreter" conflicts with judicial recognition that evidence of intoxication "is dissipating" during the stop, field sobriety testing, arrest, transport and breath- or blood-testing of a driver suspected of OMVWI. *See, e.g., Schmerber v. California*, 384 U.S. 757, 770–71 (1966); *State v. Bohling*, 173 Wis. 2d 529, 494 N.W.2d 399 (1993).

¶ 11. We conclude that the State preserved its right to make its present argument by making known in the trial court its position that the arresting officer's actions after he arrested Piddington complied with the statutory requirement to "inform the accused." *See* WIS. STAT. § 343.305(4). The argument the State now makes is at most a refinement of the argument it presented in the trial court. The State neither raises a new issue nor advances a theory different than one it presented in the trial court.[4]

¶ 12. Having concluded that there is no obstacle to our considering the State's assertion that WIS. STAT. § 343.305(4) requires nothing more than that an arresting officer "orally inform" an OMVWI arrestee of the required information, we must now ask whether the assertion is correct. We conclude that it is.

¶ 13. Piddington's principal argument in support of the trial court's decision is that the "informing the accused" requirement under WIS. STAT. § 343.305(4) is analogous to *Miranda* warnings, which, according to Piddington, must be conveyed "in a language the person does understand and comprehend." *See State v. Santiago*, 206 Wis. 2d 3, 13, 556 N.W.2d 687 (1996) ("When a suspect cannot communicate in English, law enforcement officers should give the *Miranda* warn-

---

[4] The "waiver" or forfeiture rule we discussed and applied in *State v. Rogers*, 196 Wis. 2d 817, 539 N.W.2d 897 (Ct. App. 1995), is a "rule . . . of administration," and does not affect the power of an appellate court to address an issue first raised on appeal if, in its discretion, the court chooses to do so. *See Brown County v. DHSS*, 103 Wis. 2d 37, 42, 307 N.W.2d 247 (1981). Because we conclude that the State did not forfeit its right to make the argument it makes on appeal, it is not necessary for us to consider whether we should exercise our discretion to forego application of the waiver rule.

ings in a language the suspect understands in order to ensure that the suspect comprehends the *Miranda* warnings and can knowingly and intelligently waive the *Miranda* rights."). In equating the requirements of § 343.305(4) to *Miranda*, Piddington relies on the following statement from our opinion in *County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 276, 542 N.W.2d 196 (Ct. App. 1995): "[T]he warnings provided drivers under the implied consent law are analogous to those employed in *Miranda*-type cases."

¶ 14. We clarified later in the *Quelle* opinion, however, that the similarity between the two "warnings" was a "functional" one, and that their sources were quite different. *See id.* at 277 n.1, 278. Nowhere in the *Quelle* opinion did we suggest that the requirements of the implied consent law were governed by all of the case law which has developed and refined the requirements and operation of the *Miranda* holding. In fact, we agree with the State that our ultimate conclusion in *Quelle* suggests just the opposite. We concluded that the supreme court had not recognized "subjective confusion" as a "defense" in proceedings relating to the requirements of WIS. STAT. § 343.305(4); in other words, the implied consent law does *not* "require assessing the *driver's perception* of the information delivered to him or her." *Id.* at 280. Rather, the adequacy of the implied consent "warning process" is to be judged objectively via a three-part inquiry which focuses on whether the arresting officer omitted or oversupplied information to the OMVWI arrestee which affected the person's choice regarding chemical testing. *See id.* We specifically rejected a claim that the officer had "a duty to 'explain' and not merely read the information form." *Id.*

¶ 15. We conclude that it is but a small step from our analysis and discussion in *Quelle* to a conclusion that, so long as an arresting officer "orally informs" an arrestee of the correct required information, judicial inquiry is over.[5] That is, a court need not delve into whether the information was properly perceived or

[5] WISCONSIN STAT. § 343.305(4) (1995–96), which was effective at the time of Piddington's arrest, provided that at the time an arresting officer requests an OMVWI arrestee to submit to testing for alcohol concentration, the "person shall be orally informed by the law enforcement officer" of certain information specified in the statute. The required information related to the person's "deemed consent" to a test, sanctions for refusing the test, possible sanctions if testing shows a prohibited alcohol concentration, and rights to additional testing.

WISCONSIN STAT. § 343.305(4) (1997–98), applicable to tests requested as of August 1, 1998, provides instead that the officer "shall read the following to the person from whom the test specimen is requested:"

"You have either been arrested for an offense that involves driving or operating a motor vehicle while under the influence of alcohol or drugs, or both, or you are suspected of driving or being on duty time with respect to a commercial motor vehicle after consuming an intoxicating beverage.

This law enforcement agency now wants to test one or more samples of your breath, blood or urine to determine the concentration of alcohol or drugs in your system. If any test shows more alcohol in your system than the law permits while driving, your operating privilege will be suspended. If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties. The test results or the fact that you refused testing can be used against you in court.

If you take all the requested tests, you may choose to take further tests. You may take the alternative test that this law enforcement agency provides free of charge. You also may have a test conducted by a qualified person of your choice at your expense. You, however, will have to make your own arrangements for that test.

266

understood by the OMVWI arrestee. There are several reasons why this conclusion is the correct one. First, and most importantly, there is nothing in the plain language of WIS. STAT. § 343.305 to suggest otherwise. Indeed, since the statute requires the information to be provided only to persons who are probably intoxicated, it is unlikely that the legislature intended a person's understanding or comprehension of the information to be determinative of compliance with the statute.[6]

¶ 16. As we discussed in *Quelle*, unlike *Miranda* warnings which have constitutional underpinnings, the "informing the accused" requirement is purely statutory. *See Quelle*, 198 Wis. 2d at 277 n.1. The Supreme Court in *Schmerber v. California*, 384 U.S. 757 (1966),

---

If you have a commercial driver license or were operating a commercial motor vehicle, other consequences may result from positive test results or from refusing testing, such as being placed out of service or disqualified."

We conclude that the recent amendment to the "informing the accused" requirement does not affect our analysis or conclusion. The amended requirement that an officer simply "read" certain information to an arrestee, if anything, strengthens our conclusion that the legislature's intent is that an officer's duty is to provide the correct information to an arrestee, not that the officer must guarantee comprehension of it.

[6] *See Village of Oregon v. Bryant*, 188 Wis. 2d 680, 693, 524 N.W.2d 635 (1994) ("[I]t must be remembered that the accused, who is the recipient of the information, has been determined, to a degree of probable cause, to be under the influence of alcohol."); *see also State v Weishar*, 717 P.2d 231, 235 (Or. App. 1986) ("[T]he legislature could hardly have contemplated that it was necessary that there be a completely knowing and understanding submission [to the test]. If this were the case, the only people who could be tested would be those who were not sufficiently intoxicated to interfere with their mental processes.") (citation omitted).

267

held that a state-compelled blood test following a person's arrest for OMVWI does not violate the Fourth, Fifth or Fourteenth Amendments to the U.S. Constitution. Thus, an arrestee's understanding or comprehension of the information required to be provided under WIS. STAT. § 343.305(4) is not needed to legitimize a knowing and informed waiver of constitutional rights, as is the case with *Miranda* warnings. We conclude that the legislature could have chosen to implement the implied consent law without directing law enforcement to inform arrestees of any of the information the statute specifies. Compliance with the statutory directive is mandatory, but there is no constitutional justification for judicially imposing requirements which go beyond what the statute requires.

¶ 17. The State has brought to our attention appellate decisions from several other states where courts have ruled that law enforcement agencies need not provide interpreters for hearing impaired persons in order to comply with "informing the accused" requirements similar to Wisconsin's. The hearing impaired defendant in *Commonwealth v. Mordan*, 615 A.2d 102 (Pa. Super. 1992), on facts very similar to those before us, argued that "an interpreter should have been provided so that he could exercise his statutory right to refuse the test and be informed of the consequences of a refusal." *Id.* at 105. The relevant Pennsylvania statute provided that "it shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing." *Id.* at 108 (citation omitted). The court concluded that although a "knowing refusal" might be required prior to imposing sanctions for refusing to submit to testing, "[n]o where

does the law require the officer to make certain that the motorist understands that he could exercise a right to refuse a breathalyzer test. . . . [A motorist has no] right to a knowing and conscious submission to the breath test." *Id.* at 108–09.

¶ 18. We acknowledge that in Wisconsin, arresting officers must provide more information to an OMVWI arrestee than simply the consequences of refusing a test. *See* WIS. STAT. § 343.305(4) (1997–98). The additional information required under our statute, however, does not undermine the Pennsylvania court's basic rationale—that a hearing impaired motorist has neither a constitutional nor a statutory right to an interpreter before submitting to a test for alcohol concentration. The Pennsylvania court relied in part on the reasoning of the Oregon Court of Appeals in *State v Weishar*, 717 P.2d 231, 235 (Or. App. 1986). Oregon's "informing the accused" requirement was more extensive than that described in *Mordan*, in that it required that the arrestee be told of the consequences of both a test result over the legal limit and a refusal to submit to testing. *Id.* at 236. Nonetheless, the Oregon court also concluded that a hearing impaired motorist was not entitled to an interpreter, and that the legislative purpose behind the information requirement did not "require that [a] defendant understand what he has been told. . . ." *Id.* at 237.[7]

¶ 19. Piddington has not cited any occasion where an appellate court has come to a contrary conclusion regarding the requirements of a state implied consent law. The State, however, notes that the Georgia Court of Appeals has concluded that arresting

---

[7] *See also Warner v. Commissioner of Pub. Safety*, 498 N.W.2d 285 (Minn. Ct. App. 1993); *People v. Long*, 693 N.E.2d 1260 (Ill. App. 1998).

officers in that state were required to obtain a qualified sign-language interpreter to convey implied consent law information to a hearing impaired person under a Georgia statute that provided as follows:

> No interrogation, warning, informing of rights, taking of statements, or other investigatory procedures shall be undertaken until a qualified interpreter has been provided; and no . . . evidence acquired from the hearing impaired person shall be admissible in any criminal . . . proceeding unless such was knowingly and voluntarily given through and in the presence of a qualified interpreter.

*Allen v. State*, 463 S.E.2d 522, 523–29 (Ga. App. 1995).

¶ 20. We conclude that the rationale of the Georgia court's holding is not applicable to the present facts because Wisconsin has no similarly worded statute. Moreover, after stating its conclusion that the test results must be suppressed in light of the violation of the quoted statute, the Georgia court went on to explain at length why the legislature should repeal or amend the provision as it related to alcohol tests under the implied consent law:

> Although we recognize the necessity to "convey" the proper advice to the hearing impaired in a fair manner, in our view it is not reasonable to condition admissibility of DUI evidence on the presence of a "qualified interpreter" . . . when it is a near certainty that none will be available at the times most DUIs occur.
>
> . . . .
>
> . . .The legislature should change this law.

*Id.* at 525–26.

¶ 21. Finally, we turn briefly to a consideration of Piddington's alternative argument that the test result should be suppressed because the administration of the test without a qualified sign language interpreter being present violated the federal Rehabilitation Act of 1973, the Americans with Disabilities Act (ADA), and State Patrol policies and procedures. We acknowledge that each of these sources suggests that reasonable steps should be taken to enable hearing impaired persons to communicate effectively during interactions with law enforcement officers.[8] It is not necessary, however, for us to determine whether the trooper complied with these provisions, because even if he did not, the remedy for a violation lies elsewhere and not in the suppression of evidence in this criminal prosecution. *See State v. Mieritz*, 193 Wis. 2d 571, 574, 534 N.W.2d 632 (Ct. App. 1995) ("The exclusionary rule requires suppression of evidence 'only when the police obtain[ ] the evidence in violation of the defendant's constitutional rights,' or in violation of a statute that expressly requires suppression as a sanction.") (citation omitted). Piddington cites no federal or state statute, or any other authority, that includes suppression as a remedy

---

[8] In this regard, we note again that the trial court found "the attempts of law enforcement to communicate with the defendant were reasonable . . . perhaps even exemplary. . . ." The trooper who arrested Piddington requested assistance from another officer who possessed a language skill that aided communications with him, and Piddington was allowed to read the "Informing the Accused" form for himself, in addition to having it read to him. We agree with the trial court that these steps are to be commended as good law enforcement practices.

for a violation of the federal laws and state patrol policies he discusses in his brief.[9]

## CONCLUSION

¶ 22. For the reasons discussed above, we reverse the trial court's order suppressing the blood test result and other evidence gathered following Piddington's arrest, and we remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.

---

[9] The Wisconsin Supreme Court has held that even police violations of the implied consent statute itself do not warrant suppression of an alcohol test result. *See State v. Zielke*, 137 Wis. 2d 39, 41, 403 N.W.2d 427 (1987). The court has also held, however, that a court may, in its discretion, order suppression for certain aggravated violations of the requirements of WIS. STAT. § 343.305. *See id.* at 55–56 (discussing *State v. McCrossen*, 129 Wis. 2d 277, 385 N.W.2d 161 (1986)). Piddington relies on *McCrossen* in arguing that the trial court's suppression order should be affirmed. The State, however, has not argued that the *Zielke* rationale should govern on the present facts, relying instead on its theory that the arresting officer did not violate § 343.305. Because we agree with the State's assertion, and because the State has not argued that suppression would not be proper even if the trooper violated the statute, we do not address the issue.