589 A.2d 272

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**Arthur J. GAERTNER, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 19, 1990.

Decided March 11, 1991.

Publication Ordered March 11, 1991.

Reargument Denied May 6, 1991.

Timothy P. Wile, Asst. Counsel–In–Charge of Appellate Section, with him, Harold H. Cramer, Asst. Chief Counsel, and John L. Heaton, Chief Counsel, Pittsburgh, for appellant.

Linda Rovder Fleming, Russell, Pappas & Rozich, Johnstown, for appellee.

Before DOYLE and BYER, JJ., and BARRY, Senior Judge.

BARRY, Senior Judge.

The Department of Transportation, Bureau of Driver Licensing (the department) appeals an order of the Court of Common Pleas of Cambria County dated April 6, 1990, which sustained the appeal of Arthur J. Gaertner (Gaertner) from a department order suspending Gaertner's operating privilege for one year pursuant to 75 Pa.C.S. § 1547 for failure to submit to a blood test.

On August 28, 1989, Johnstown police officer Andrew Litvin saw Gaertner run a red light. Gaertner then crossed the center line of the road and hit a parked car. As Officer Litvin approached the car to see if Gaertner was injured, he became aware that Gaertner was hearing-impaired because he had to tap Gaertner on the shoulder to get his attention and because Gaertner did not seem to understand what he was saying unless they were directly facing one another. While speaking to Gaertner, Officer Litvin detected a strong odor of alcohol about Gaertner's person, noticed Gaertner's eyes were glassy and blood shot, and that he was unsteady on his feet. Officer Litvin asked Gaertner to submit to a blood test to determine the alcohol content in his blood and Gaertner refused. Having probable cause to believe that Gaertner was driving under the influence of alcohol, Officer Litvin arrested Gaertner and transported him to the police station.

Upon arrival at the station, Officer Litvin began the booking process. Officer Litvin was able to communicate with Gaertner to obtain basic information such as age, height, weight, address and the like. Litvin would point to the space provided for such information and Gaertner would answer. Officer Litvin again asked Gaertner if he would submit to a chemical test and Gaertner replied that he would not. Litvin telephoned the Hiram G. Andrews Center where Gaertner is a client and asked if an interpreter was available that he could use. Officer Litvin was informed that there were no interpreters on call. Litvin then asked for someone from the center to come and pick up Gaertner because he had been arrested. When Mr. Richard Statnick, an employee of the center, arrived, Officer Litvin again asked Gaertner to submit to chemical testing. Officer Litvin wrote a statement asking whether Gaertner would submit to a blood test to determine if he was intoxicated. The statement further provided that if Gaertner refused, he would lose his license for one year. Underneath this statement were two separate lines, one which read "I will submit to the test" and another which read "I will not submit to the

test." Mr. Gaertner placed an $X$ next to the line refusing the test and signed the statement. The department, by order dated September 27, 1989, notified Gaertner that his operating privilege was to be suspended for one year pursuant to 75 Pa.C.S. § 1547 for failing to submit to chemical testing.

Gaertner appealed the department's order to the Court of Common Pleas of Cambria County and a *de novo* hearing was held on March 12, 1990. Officer Litvin testified to the events leading up to the arrest and the communications he had with Gaertner while at the site of the accident and at the police station. Mr. Statnick testified to the statement written by Officer Litvin and his observations of Gaertner. Gaertner himself testified through an interpreter that his refusal was not knowing and conscious because he needed an interpreter, regardless of the fact that he never requested one. He further stated that he did not understand the words submit, determine, or intoxicated as used in officer Litvin's written statement. Ms. Shirley Bassett also testified. She was qualified as an expert in the field of deaf and hearing impaired communications and testified that deaf people normally have a sixth to eighth grade educational level. She further stated that after talking to Gaertner she was of the opinion that he does not have a good command of the English language and could understand only simple words and simple sentences composed of three or four words. Finally, Ms. Bassett stated that she did not believe Gaertner could have understood the statement written by Officer Litvin without the services of an interpreter. The Honorable Thomas Swope, after hearing all of the testimony, concluded that Gaertner, in fact, needed an interpreter to make a knowing and conscious refusal. Thus, the court sustained Gaertner's appeal and rescinded the department's order suspending Gaertner's operating privilege. A timely appeal by the department was brought to this Court.

As an appellate court, we must confine our review to whether the findings of fact are supported by competent evidence, whether there has been an error of law, or wheth-

er the trial court abused its discretion. *Gresh v. Department of Transportation, Bureau of Traffic Safety,* 76 Pa.Commonwealth Ct. 483, 464 A.2d 619 (1983).

Neither party disputes the fact that the department has met its initial burden of proving that the motorist (1) was arrested for driving while intoxicated, (2) was requested to submit to chemical testing, (3) refused to so submit, and (4) was informed that such refusal would result in suspension of his license. *Schnitzer v. Commonwealth,* 85 Pa.Commonwealth Ct. 38, 480 A.2d 388 (1984). Once the department has sustained its burden of proof to establish a refusal under 75 Pa.C.S. § 1547, the burden then shifts to the motorist to show that his refusal was not the product of a knowing and conscious decision. *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989). The question of whether a motorist's decision to refuse chemical testing was knowing and conscious is a question of fact for the trial court. *Capozzoli Appeal,* 63 Pa. Commonwealth Ct. 411, 437 A.2d 1340 (1981). Because of our limited scope of review, we are bound by the trial court's findings of fact unless they are not supported by substantial evidence or constitute an error of law.

The primary issue for our consideration is whether the trial court abused its discretion or erred as a matter of law in finding that a deaf motorist met his burden of proving that his refusal to take a blood test was not the product of a knowing and conscious decision.

The department relies upon *Department of Transportation, Bureau of Driver Licensing v. Peck,* 132 Pa.Commonwealth Ct. 509, 573 A.2d 645 (1990), for support of its proposition that Gaertner has, as a matter of law, failed to sustain his burden of proof. In *Peck,* the motorist, after an arrest for drunk driving, argued that his refusal to submit to chemical testing was not knowing and conscious because he suffers from a learning disability which renders him incapable of functioning under stress; he has what amounts to diminished capacity and was, therefore, unable to under-

stand the consequences of refusing the test. We rejected the motorist's argument in *Peck* based on our conclusion that such a finding was not supported by substantial evidence. The expert psychologist who testified for Peck did not expressly rule out alcohol as a contributing factor to the confusion nor did he express the opinion that Peck's learning disability actually prevented him from making a knowing and conscious refusal.

Gaertner finds support for his argument that his refusal was not knowing and conscious in *Department of Transportation, Bureau of Motor Vehicles v. Yi*, 128 Pa.Commonwealth Ct. 117, 562 A.2d 1008 (1989). There, we upheld a rescission of a driver's license suspension because the motorist's refusal was not knowing and conscious. The motorist, Yi, was a non-English speaking immigrant. He testified at trial through an interpreter that he had no understanding of the English language and, therefore, did not and could not understand the ramifications of his refusal to submit to chemical testing upon his arrest for drunk driving. The trial judge credited Yi's testimony that he, in fact, was unable to understand English and, therefore, could not have made a knowing and conscious refusal. This particular factual finding by the trial judge was held to constitute substantial evidence.

While Gaertner maintains that *Yi* is controlling because sign language is akin to a foreign language, the department contends that the present case is clearly distinguishable from *Yi* and more in line with *Peck*. The department argues that Gaertner has a considerably greater command of the English language than the immigrant had in *Yi*. In *Yi*, the motorist did not understand any English and here, Gaertner has at least a sixth to eighth grade command of the written English language. The department maintains that a sixth or eighth grade educational level amounts to diminished intellectual capacity and under *Peck*, intellectual immaturity does not provide a license to disregard the driving rules. On the other hand, Gaertner argues that he has a language deficiency, not a mental defect or incapacity,

and this deficiency could have easily been remedied by using an interpreter.

We think that the case before us straddles the fine line between *Yi* and *Peck,* two cases where the inability to understand is asserted as a defense but where it prevails in one and fails in the other. This case, we think, falls closer to *Yi* in a number of respects. First, the immigrant in *Yi* was unable to testify at trial without an interpreter. Similarly here, Gaertner needed an interpreter at trial to understand the proceedings as well as to respond to all questions. Secondly, the language deficiency of Gaertner does not necessarily amount to intellectual immaturity nor is it properly labelled a learning disability. The motorist in *Peck* claimed that his learning disability manifested itself in the form of improper intellectual functioning under stress. A logical deduction from this statement is that in non-stressful situations his intellectual functioning is unhampered. In the case before us, however, Gaertner's hearing impairment is a constant hindrance when dealing with hearing persons regardless of the level of stress in the situation; his inability to understand the spoken or written word above a simplistic level is not something which can be triggered by the occurrence or non-occurrence of a particular event.

Perhaps the most compelling reason in this case which leads us to affirm the trial court bears on our standard of review. Whether one has made a knowing and intelligent refusal to submit to chemical testing is a question of fact for the trial court. *Capozzoli Appeal.* As fact finder, the trial judge is required to evaluate the witnesses, their demeanor and make the necessary credibility determinations. *Im v. Department of Transportation,* 108 Pa.Commonwealth Ct. 206, 529 A.2d 94 (1987). These credibility determinations cannot be disturbed on appeal if they are supported by substantial evidence. *Im.* In the case at bar, the trial judge, after hearing testimony by the witnesses, specifically credited Gaertner's testimony when he stated in his opinion "Petitioner was not aware of what was going on, nor the consequences of his actions when he signed the

paper given him by Officer Litvin." (Opinion of the Trial Court, slip op. at 5.) Furthermore, the trial court credited the testimony of Shirley Bassett, the expert in deaf communications, when the court found "very persuasive the expert testimony of Shirley Bassett." *Id.* In our review of the record, we find the necessary substantial evidence to support the factual findings made by the trial court. Given the foregoing, we affirm.

## ORDER

NOW, March 11, 1991, the order of the Court of Common Pleas of Cambria County, dated April 6, 1990, at No. 1989–2536 is hereby affirmed.

DOYLE, Judge, concurring.

I concur in the result reached by the majority and write separately only to express my disagreement with the holding in *Department of Transportation, Bureau of Driver Licensing v. Peck*, 132 Pa.Commonwealth Ct. 509, 573 A.2d 645 (1990), for the reasons stated in my dissenting opinion in that case. Our appellate review both here and in *Peck* is identical.

BYER, Judge, dissenting.

Judge Barry's opinion describes this case as straddling "the fine line between *Yi* and *Peck*." I agree that this is a close case; however, I believe that it is factually distinguishable from *Yi* and more closely aligned with *Peck*. I do not share Judge Doyle's disagreement with *Peck;* in fact, I believe that *Yi* was decided incorrectly, while the opinion in *Peck* was correct. Therefore, on the basis of *Peck*, and because the trial judge's decision here was not supported by substantial evidence and is erroneous as a matter of law, I think this case falls on the *Peck* side of the fine line.

One reason that Judge Barry analogizes this case to *Yi* is that in both cases the defendants required an interpreter during trial. I cannot agree with that comparison. Unlike

Yi, who required an interpreter because he had no understanding of English, Gaertner had a fundamental grasp of the English language. Gaertner required an interpreter only because he could not hear the spoken word and so needed a visual transmission of any communication. Yi, on the other hand, was completely unable to understand English, despite the manner in which it was presented to him. Although Gaertner proved he had some command of the written English language when he capably assisted the arresting officer during the booking process without outside aid, Yi required an interpreter from the outset, and never answered any question, written or oral, without his assistance.

The police officer in this case was aware of Gaertner's hearing impairment and sought the assistance of an interpreter; however, he was unsuccessful in obtaining one. Because the officer recognized Gaertner's ability to understand the written word, he requested Gaertner to submit to the test *in writing,* and informed him *in writing* that his license would be suspended if he refused; nevertheless, Gaertner failed to comply.

Gaertner claimed that he could not comprehend several of the words in the written request; however, this should not excuse his noncompliance. Even if particular words in this written request were difficult for him, Gaertner's intellectual and educational level, admitted to be at least at a sixth grade level, certainly would have enabled him to communicate any lack of understanding to the officer. Because Gaertner's education and reading ability enabled him to pass the driver's test and obtain a license in the first place, this capability is apparent.

After comparing the facts to *Yi,* Judge Barry attempts to distinguish this case from *Peck* by pointing out that Peck's learning disability only manifested itself in the form of impaired intellectual functioning when Peck was under stress, while Gaertner's hearing impairment was permanent. If this distinction is intended to prove that Gaertner was less capable than Peck of making a knowing and

conscious refusal, it is beside the point. The evidence in that case clearly indicated that Peck was under stress and his intellectual ability was diminished at the time. Therefore, it is immaterial how he might have reacted under different circumstances when stress was not a factor. Moreover, there is no way to determine how severely impaired Peck had become. It is possible that his disability may have rendered him less conscious of what was going on than Gaertner, particularly because Gaertner's disability was not the type that was triggered suddenly and unexpectedly, but was one with which he coped on a daily basis.

In fact, if it were argued that Gaertner's refusal was not knowing or conscious based on the permanence of his disability, I would agree with Judge Doyle's dissent in *Peck* that a chronic lack of ability to function as a competent driver should preclude an individual from possessing a driver's license at all. The police officer was correct in assuming that a licensed driver is capable of understanding a written message like the one he presented to Gaertner. Where a police officer is aware of a licensee's confusion, he is required to take reasonable measures to resolve the problem. However, without any manifestation of the problem evidenced by a request for an interpreter or other indication that Gaertner did not understand what was happening, the police officer had no further obligation to explain. If any confusion existed, it was not created by the police; rather, the police officer tried to assure Gaertner's understanding by presenting the request in writing.

Finally, although the defendant's contention in *Peck* was supported by competent and convincing medical testimony, the court in *Peck* stressed that there was no proof that the defendant's learning disability was all that actually prevented his refusal from being knowing and conscious. On the contrary, because Peck's intoxication might have been a contributing factor, we found that Peck had not met his burden of proof. Similarly in this case, although the interpreter provided convincing testimony that Gaertner might not have had a full understanding of the ramifications of his

refusal to submit to the test, she did not expressly rule out alcohol as a factor contributing to his confusion. According to *Peck*, a driver must prove that it was his physical disability and not his voluntary intoxication which played the greater role in rendering him incapable of making a knowing and conscious refusal. Gaertner was unable to meet this burden.

Despite acknowledging that this is a close case, Judge Barry's opinion concludes that our scope of review mandates affirming the trial court in this case. I disagree. Although findings of fact will not be reversed on appeal when they are supported by adequate evidence, this principle is confined to genuine findings of fact; we are not bound by deductions and conclusions which the trial court makes on the basis of findings of basic fact. "[W]hen a finding of fact is simply a deduction from other facts reported by the tribunal under review, and the ultimate fact in question is purely the result of reasoning, we are competent to judge of its correctness and will draw our own conclusions from the facts as reported." *Stambaugh v. Stambaugh*, 458 Pa. 147, 152, 329 A.2d 483, 486 (1974) (quoting *Dorrance's Estate*, 309 Pa. 151, 156, 163 A. 303, 304 (1932)). Appellate courts need not accept the deductions made by the trial court from the basic facts found by the trial court, nor must we reach the same conclusions. *See* 16 *Standard Pennsylvania Practice 2d* § 91:153 (1983) (collecting cases). I am not questioning here the trial court's credibility determination or fact finding ability, but whether, after a review of the whole record, the licensee has met his burden of proof.

Furthermore, the scope of our review allows us to reverse a trial court's decision in a case such as this where there has been an error of law or manifest abuse of discretion. *Gresh v. Commonwealth, Department of Transportation*, 76 Pa.Commonwealth Ct. 483, 486 n. 2, 464 A.2d 619, 621 n. 2 (1983). I would find an error of law or manifest abuse of discretion here for two reasons. First, as discussed above, Gaertner failed to prove that alcohol consumption did not

play a role in his supposed inability to make a knowing and conscious refusal. Second, I would hold that the obtaining of a driver's license gives rise to a presumption that the driver has the ability to understand written expression to the extent required as a qualification to obtain an operator's license.

Every person who obtains a driver's license in this Commonwealth is required to demonstrate at least some proficiency at understanding rudimentary written expression in English.[1] The Department of Transportation's regulations provide that every applicant for a driver's license must take and pass a road sign examination:

> Every applicant for a driver's license and every driver the Department has reason to believe does not have the ability to read and understand official traffic control devices shall submit to a road sign examination. The examination shall include identification of all standard road signs. Any examinee who fails to identify two or more signs shall fail the examination.

67 Pa.Code § 75.4.

The Department's regulations also require every applicant for an operator's license to pass an oral, visual or written examination concerning the laws governing the use and operation of motor vehicles in Pennsylvania.

> Every applicant for a driver's license and every driver the Department has reason to believe does not have reasonable and proper understanding of the laws governing the use and operation of motor vehicles on Pennsylvania highways shall submit to a law examination. The law examination shall consist of an oral, written or visual test of ten questions. In the case of an application for a license, the questions will relate as nearly as practicable to the class of vehicles for which the applicant desire to be licensed. Questions will be taken from the most

---

1. I appreciate that Yi, as a licensed driver, also was required to display some measure of understanding of the English language. Therefore, this dissent should not be interpreted as an endorsement of Yi. On the contrary, unlike Judge Doyle, I believe that Yi was decided incorrectly, and that Peck is a correct decision.

recent edition of the *Pennsylvania Manual for Drivers* or related publications for specific classes of vehicles, or both. Eight correct answers shall be a passing grade. 67 Pa.Code § 75.5.

These requirements create a presumption that Gaertner, as a licensed driver, had a sufficient working knowledge of English to comprehend the simple written request and warning which the police officer gave to him in this case.[2] Therefore, I believe the trial court erred as a matter of law or abused its discretion in permitting Gaertner to impeach his own qualifications as a licensed driver.

Another condition of obtaining a driver's license is that the licensee consent to submit to chemical testing where, as here, there was reasonable cause to believe the licensee was driving under the influence. 75 Pa.C.S. § 1547. In my opinion, Gaertner did not present any basis upon which he could be relieved of the consequences of failing to submit to the chemical testing to which he consented as a condition of his driver's license.

A physical impairment is not a license to drive drunk or to avoid the duties imposed by law on those who choose to drive in the Commonwealth. Our courts should not allow a licensed driver to avoid the legal duties attendant to the license by concocting defenses which would establish that the driver obtained his license in violation of the legal requirements.

Therefore, I respectfully dissent, and I would reverse the decision of the trial court and reinstate the suspension.

---

2. I would not apply this presumption in a case which arises other than under the Vehicle Code.