THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MELVIN K. LONG, Defendant-Appellant.

Fourth District    No. 4—96—0627

Opinion filed April 22, 1998.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Scott A. Brunton, State's Attorney, of Eureka (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

After a stipulated bench trial in the circuit court of Woodford County, defendant Melvin K. Long was convicted of driving under the influence of alcohol (DUI) (625 ILCS 5/11—501 (West 1994)). The trial court placed defendant on 24 months' court supervision, assessed $169 in costs, and ordered him to perform 100 hours of public service work. Defendant appeals, alleging the trial court erred in denying his motion to suppress. Defendant maintains the arresting police officer violated his rights under the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C.A. § 12101 *et seq.* (West 1995)) by failing to provide him with a sign language interpreter upon his request. We affirm.

For his conduct on September 9, 1995, defendant received a traffic citation for DUI. On November 13, 1995, defendant filed a motion to suppress evidence of the use of field-sobriety and breathalyzer tests. Defendant, who is deaf, argued the ADA requires law enforcement to provide qualified interpreters for individuals who are deaf. Defendant maintained on several occasions he requested the provision of a qualified interpreter so he could understand the officer's instructions, but the interpreter was not provided for him. Defendant contended because he was denied an interpreter, a violation of his constitutional rights occurred when the officer obtained the field tests and the breathalyzer results.

Neither a transcript of the hearing on defendant's motion to suppress nor a bystander's report of that hearing is included in the record. The facts below, as well as the facts relied upon by the parties, are found in the common law record and the trial court's written order following the hearing.

A police officer stopped defendant on September 9, 1995, at approximately 10:30 p.m. The officer advised defendant his taillights were not working, by showing the lights on his automobile to him. The officer demonstrated to defendant how to perform field-sobriety tests. Defendant, unable to hear anything, copied the officer and performed the field-sobriety tests. Defendant and the officer communicated periodically by using written notes. The officer arrested defendant and transported him to the Woodford County jail, where a breathalyzer test, performed by defendant, evidenced an alcohol concentration of .18.

Prior to performing the breathalyzer test, defendant received the "Warning to Motorist." The applicable portions of the one-page warning informed defendant:

"Considering the above, you are warned:

1. If you refuse or fail to complete all chemical tests request and:

If you are a first offender, your driving privileges will be suspended for a minimum of 6 months; *or*

If you are not a first offender, your driving privileges will be suspended for a minimum of 2 years.

2. If you submit to a chemical test(s) disclosing an alcohol concentration of 0.10 or more or any amount of a drug, substance or compound resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act or a controlled substance listed in the Illinois Controlled Substances Act and:

If you are a first offender, your driving privileges will be suspended for a minimum of 3 months; *or*

If you are not a first offender, your driving privileges will be suspended for minimum of one year." (Emphasis in original.)

Defendant indicated he did not understand the *entire* warning, but he did understand the consequences of refusing the test, *i.e.*, he would receive a six-month suspension instead of a three-month suspension if he failed. Based on that information, defendant decided to take the breathalyzer test. Defendant testified he requested an interpreter four times, but the officer denied his requests.

The trial court found defendant was not provided a sign-language interpreter during his arrest. The trial court, denying defendant's motion, concluded the ADA contemplates written communication may adequately substitute for sign language and found it did so in this case. The trial court determined defendant was able through written communication to perform the field-sobriety tests commonly given in DUI arrests. The trial court concluded defendant understood the impact of his decision in electing to take the breathalyzer test.

After the stipulated bench trial, defendant was sentenced. Defendant filed notice of appeal on August 9, 1996, one day after he was sentenced. On August 27, 1996, defendant filed a motion to reconsider. On September 5, 1996, defendant filed an amended motion to reconsider and vacate judgment. On October 10, 1996, the trial court denied defendant's motion to reconsider. We note the filing of the notice of appeal divested the trial court of jurisdiction, so we have jurisdiction to consider the issue raised.

On appeal, defendant maintains this court should reverse his conviction because his requests for a sign language interpreter were denied. Defendant cites statutory and case law regarding the requisite provision at trial of sign language interpreters for the deaf or "reasonable facilities" for individuals with disabilities. See, *e.g.*, 725 ILCS 140/1 (West 1994); *People ex rel. Myers v. Briggs*, 46 Ill. 2d 281, 287, 263 N.E.2d 109, 113 (1970); *People v. Branson*, 131 Ill. App. 3d 280, 287, 475 N.E.2d 905, 911 (1984). Defendant provides no statutory cites or case law directly supporting his proposition that denial of an interpreter during a DUI investigation denied his rights under the ADA.

The State cites the Code of Federal Regulations (28 C.F.R. § 35.160 (1997)) and maintains the police officer did not violate any rights under the ADA, because the ADA requires the public entity to take appropriate measures to ensure communications with individuals who are deaf are as effective as communications with others. The State contends the deaf individual's request must be given primary consideration, but that request need not be controlling if another ef-

fective means of communication exists. The State also maintains under the decision in *People v. Wegielnik*, 152 Ill. 2d 418, 605 N.E.2d 487 (1992), the implied-consent statute and the due process clause do not require that an individual understand the consequences of refusing a blood-alcohol test.

Neither party cites controlling Illinois case or statutory law, and we know of none. Based on our review of the record and federal law, we find the trial court did not err in denying defendant's motion to suppress. *People v. Winters*, 97 Ill. 2d 151, 158, 454 N.E.2d 299, 303 (1983) (a court of review will not disturb a trial court's determination on a motion to suppress evidence unless the decision is manifestly erroneous).

The ADA prohibits a public entity from discriminating against any qualified individual with a disability because of that disability. 42 U.S.C.A. § 12132 (West 1995). According to the implementing regulations, the ADA requires the following:

"(a) A public entity shall take appropriate steps to ensure that communications with *** members of the public with disabilities are as effective as communications with others.

(b)(1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity.

(2) In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with disabilities." 28 C.F.R. § 35.160 (1997).

From the plain meaning of this regulation, a public entity is required to give "primary consideration" to the choice of the individual with disabilities, not to provide that individual's choice in every circumstance. The implementing regulations also provide the following:

" 'The public entity must provide an opportunity for individuals with disabilities to request the auxiliary aids and services of their choice. This expressed choice shall be given primary consideration by the public entity.... The public entity shall honor the choice *unless it can demonstrate that another effective means of communication exists ***.' "* (Emphasis added.) *Peterson v. Hastings Public Schools*, 31 F.3d 705, 708 (8th Cir. 1994), quoting 28 C.F.R. Pt. 35.160, app. A, at 463 (1993).

The ADA Handbook suggests the use of written communication may be sufficient for effective communication in certain circumstances. The handbook indicates factors to be considered when

determining whether an interpreter rather than written communications is required include the context in which the communication occurs, the number of individuals involved, and the importance of the communications. Other considerations include whether the information is complex or exchanged for a long period of time. H. Perritt, Americans with Disabilities Act Handbook, app. C, at 203 (3d ed. 1997).

The context of the communication was a DUI investigation during the late evening hours on a Saturday night. A requirement for police officers to delay their investigation to make arrangements for the provision of a sign-language interpreter would interfere with the law's objectives because the alcohol concentration in the blood dissipates over time. See *Wegielnik*, 152 Ill. 2d at 425, 605 N.E.2d at 490. The communication involved two individuals. The communication was important, as defendant was being investigated for a DUI, but the information was not complex, nor was it exchanged over a long period of time. Defendant acknowledged the use of written materials. Significantly, we note no findings or allegations the officer refused to communicate with defendant via written notes and no indication a sign-language interpreter would have helped defendant perform the field-sobriety tests or better understand the written warning. Defendant indicated he was able to mimic the field-sobriety tests, and he understood the warning to motorist regarding the consequences of taking the test. Under these circumstances, we find the use of written communication and the officer's demonstration of how to perform field-sobriety tests constituted effective means of communication, resulting in no prejudice to defendant.

Affirmed.

COOK and McCULLOUGH, JJ., concur.