Michael A. LANDSBERGER, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 17, 1998.

Decided Sept. 18, 1998.

Carmen F. Lamancusa and Leeann A. Fulena, New Castle, for appellant.

Elaine N. Blass, Asst. Counsel, Timothy P. Wile, Asst. Counsel In-Charge, Harrisburg, for appellee.

Before FLAHERTY and LEADBETTER, JJ., and NARICK, Senior Judge.

FLAHERTY, Judge.

Michael A. Landsberger (Licensee) appeals from an order of the Court of Common Pleas of Lawrence County (trial court) which dismissed Licensee's appeal from an order of the Department of Transportation, Bureau of Driver Licensing (Department). The Department's order had suspended Licensee's driver's license for one year for failure to submit to chemical testing pursuant to Section 1547(b) of the Vehicle Code (Code) [1]. We affirm.

The facts as found by the trial court are summarized as follows. On January 27, 1997, Pennsylvania State Police Trooper Todd Scott (Trooper Scott) found Licensee asleep at the wheel of his running vehicle. Trooper Scott awoke the Licensee and opened the door of the vehicle. Upon opening the door, Trooper Scott detected a strong odor of alcohol. After Trooper Scott administered two field sobriety tests, which Licensee failed, Trooper Scott arrested Licensee for driving under the influence of alcohol. Trooper Scott testified that Licensee followed the instructions during the field sobriety tests and at no time did he ask that the instructions be repeated.

After being placed under arrest, Licensee was transported to St. Francis Hospital in New Castle for the purpose of chemical testing. After arrival at the hospital, Trooper Scott read an implied consent form to Licen-

1. 75 Pa.C.S. §§ 101–9805.

see that included Section 1547 of the Vehicle Code.[2] This implied consent form stated that refusal to submit to the chemical test would result in a license suspension. Licensee indicated that he would not submit to the blood test. Further, after reading Section 1547 to Licensee, Trooper Scott also read to Licensee the chemical test warning concerning license suspension utilized by the State Police. Once again Licensee refused to submit to the chemical test. During the reading of the warnings concerning license suspension, Licensee did not ask Trooper Scott to repeat anything, nor did he indicate that he did not understand the information. In addition, at no time did Licensee inform Trooper Scott that he had a hearing problem.

As a result of Licensee's refusal, the Department notified him on February 13, 1997, that his license was being suspended for one year as a result of his refusal to submit to chemical testing. Licensee filed an appeal to the trial court.

A de novo hearing was held on June 19, 1997. Besides his own testimony, Licensee also presented the deposition testimony of audiologist Dennis Peterson. Peterson testified that Licensee suffers high frequency sensory neural hearing loss and may have difficulty hearing certain pitches of sounds. The trial court concluded that it did not appear from the evidence concerning the in-

cident that Licensee did not hear and understand what was asked of him. Licensee followed Trooper Scott's instructions and did not ask that anything be repeated. Further, Licensee never questioned Trooper Scott or asked for the warnings to be repeated before refusing the chemical test. Thus, the trial court dismissed Licensee's appeal and his appeal to this Court followed.

■ Licensee raises one issue for our review, whether the trial court erred in concluding that he was physically capable of making a knowing and conscious refusal to submit to chemical testing.[3]

■ It is well settled that to sustain a license suspension under Section 1547 of the Code, the Department has the burden of establishing that the driver (1) was arrested for drunken driving by a police officer who had reasonable grounds to believe that the motorist was operating, or actually controlling or operating the movement of a motor vehicle, while under the influence of alcohol; (2) was requested to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal might result in a license suspension. *Department of Transportation v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989). Once the Department establishes these four elements, the burden shifts to the licensee to prove, by competent evidence, that he or she was unable to knowingly and

2. Section 1547 provides:

§ 1547. Chemical testing to determine amount of alcohol or controlled substance.
(a) General rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:
(1) while under the influence of alcohol or a controlled substance or both; or
(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.
(b) Suspension for refusal.—
(1) If any person placed under arrest for a violation of section 3731 (relating to driving

under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.
(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.
(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

3. Our review in license suspension cases is limited to determining whether the trial court's findings of fact are supported by competent evidence, errors of law were committed, or whether the trial court's decision demonstrates a manifest abuse of discretion. *Gombar v. Department of Transportation, Bureau of Driver Licensing,* 678 A.2d 843 (Pa.Cmwlth.1996).

consciously refuse chemical testing. This is a factual determination which is to be made by the trial court. *O'Connell,* 521 Pa. at 249, 555 A.2d at 876. As fact finder, the trial court is required to evaluate the witnesses, their demeanor and make necessary credibility determinations. These credibility determinations cannot be disturbed on appeal. *Department of Transportation, Bureau of Driver Licensing v. Gaertner,* 138 Pa. Cmwlth. 423, 589 A.2d 272 (Pa.Cmwlth.1991).

Clearly, in this case the Department has satisfied its burden of proof as set forth in *O'Connell.* The only question now is whether Licensee has met his burden of proving that he was unable to knowingly and consciously refuse to submit to chemical testing.

Licensee argues that he was unable to knowingly and consciously refuse to submit to chemical testing because he suffers from a loss of hearing. Licensee contends that this loss of hearing prevented him from hearing and understanding the warnings read to him by Trooper Scott, therefore, he was unaware of the consequences of his refusal to submit to chemical testing.

The Department responds by arguing that because Licensee did not inform Trooper Scott of his hearing problem, nor did he exhibit any behavior which would indicate that he had a hearing problem, he is precluded from relying on his hearing problem as an affirmative defense to the suspension of his license. In addition, the Department contends that Licensee did not meet his burden of proving by substantial, competent evidence that his hearing problem was a factor in his refusal to submit to the chemical test.

This Court has acknowledged that a hearing impairment can prevent a licensee from knowingly and consciously refusing to submit to chemical testing. *Gaertner,* 589 A.2d at 272. In *Gaertner,* the arresting officer was aware that the licensee was hearing impaired. Although the police officer was aware of this impairment, an interpreter's services were not utilized when informing the licensee of his rights or the consequences of his refusal. While we have acknowledged that a hearing impairment can prevent a knowing and conscious refusal, we have also held that if a licensee has a medical condition which could affect his or her ability to consent to or perform the test, if the officer was not notified of the medical condition, the licensee is precluded from relying upon that condition or inability as an affirmative defense to the license suspension. *Hatalski v. Department of Transportation, Bureau of Driver Licensing,* 666 A.2d 386 (Pa.Cmwlth. 1995).

■ Here, Licensee did not inform Trooper Scott of his hearing problem, nor was any hearing problem obvious to Trooper Scott. To the contrary, the trial court found that it appeared from the evidence that Licensee did hear and understand what was asked of him. Licensee followed Trooper Scott's instructions and did not ask that anything be repeated. In addition, Licensee did not ask that the warnings be repeated before refusing to submit to the chemical test. When the police officer cannot usually ascertain a medical problem, the licensee has a duty to advise the officer of the medical problem. *Larkin v. Commonwealth,* 109 Pa. Cmwlth. 611, 531 A.2d 844, 847 (Pa.Cmwlth. 1987). Licensee did not fulfill his duty and cannot now rely on his hearing problem as an affirmative defense to his license suspension. *See Hatalski,* 666 A.2d at 389.

Moreover, contrary to Licensee's assertion that his expert's testimony concerning his hearing impairment met his burden of proving that he was unable to knowingly and consciously refuse chemical testing, the record support's the trial court's conclusion that the hearing impairment would not be a factor to consider in evaluating Licensee's refusal to submit to the test.

■ When questioned during deposition, Licensee's expert acknowledged that his lack of first-hand knowledge prevented him from rendering an opinion to a reasonable certainty.[4] Accordingly, we conclude that the trial

---

4. The following exchange took place between the Department's counsel and Licensee's expert:

> Q. Mr. Peterson, you really don't know exactly what kind of factors Mr. Landsberger

was operating under on the evening in question. Other than the testing you have done two months after the event, you real-

court's evaluation of the expert's testimony and its conclusion that the testimony of the expert did not provide the substantial evidence needed to meet Licensee's burden of proof, were not in error.

Again we reiterate that we cannot find facts or determine credibility. That is the responsibility of the trial court. Here the trial court found the testimony of Trooper Scott to be more credible than that of Licensee and his expert and we cannot disturb those findings and credibility determinations on appeal since they are supported by the record.

Therefore, the order of the trial court dismissing the appeal of Licensee is affirmed.

### *ORDER*

AND NOW, this 18th day of September, 1998, the order of the Court of Common Pleas of Lawrence County dated December 30, 1997, at No. 70073 of 1997, is affirmed.

ly don't know what type of factors he was under on the evening in question, do you?

A. No, I do not.

Q. So can you really state with certainty that on the evening in question, on January 27th—and I am not talking about possibilities, I am talking about with certainty—on January 27th whether Mr. Landsberger could hear and understand what the trooper was asking him to do?

A. I could not due to unawareness at the level which the trooper was speaking and any other conditions that were involved. (RR. at 71a).