**COMMONWEALTH of Pennsylvania,**
**Appellee,**

**v.**

**John Robert ROBINSON, Appellant.**

Superior Court of Pennsylvania.

Submitted May 19, 2003.
Filed Oct. 14, 2003.

---

Joseph K. Kling, Altoona, for appellant.

Jackie A. Bernard, Asst. Dist. Atty., Hollidaysburg, for Com., appellee.

Before: DEL SOLE, P.J., GRACI and BECK, JJ.

BECK, J.

¶ 1 In this case we decide whether a deaf mute driver has a right to a certified interpreter at a DUI checkpoint before he may be asked to perform field sobriety tests. We hold that he does not, and affirm the judgment of sentence.

¶ 2 Appellant John Robert Robinson was driving on Seventh Avenue in the city of Altoona between midnight and 1:30 A.M. when he encountered a sobriety checkpoint. A police officer stopped him and noticed that his eyes were bloodshot and he had a strong odor of alcohol about him. Roaring Spring Assistant Police Chief Milton Fields (Fields), who recognized that appellant was hearing impaired, requested that he move to the "second stage" of the checkpoint for further inquiry. Fields made this request, and all others to appellant that night, with a combination of sign language and finger spelling, both of which Fields learned in 1977 at Prince George's Community College. In addition, Fields spoke slowly and loudly because, he testified, appellant indicated that he could read lips.

¶ 3 Fields, assisted by Altoona Police Corporal Earl Krug (Krug), asked appellant for his driver's license and registration; appellant obliged. Thereafter, Fields requested that appellant perform several field sobriety tests. In making these requests, Fields again combined finger spelling and sign language. He also demonstrated each test by performing it himself. Fields testified that throughout this period of contact appellant was cooperative and repeatedly gave him the "understand sign" [1] as well as verbalized "ok."

¶ 4 Appellant failed the field sobriety tests. According to Fields, appellant did not touch his heel to his toes in the heel to toe test and did not walk a straight line during that test. Further, appellant could not hold his leg up for twenty seconds as required. Finally, appellant's portable breath test registered above .08. As a result of the failures, Fields asked appellant to submit to a blood alcohol test (BAC) and appellant agreed. The test revealed a blood alcohol level of .16. Appellant was charged with DUI.

¶ 5 Prior to trial, appellant moved to suppress the results of the blood test. His request was denied and he was convicted of DUI, specifically 75 Pa.C.S.A. § 3731(a)(1) and (4). This appeal followed imposition of sentence.

---

1. Fields testified that appellant would flick his forehead with his pointer finger, a sign Fields understood to mean that appellant comprehended what Fields was communicating to him.

■ ¶ 6 Appellant's first issue repeats claims he made to the suppression court. He insists that the suppression court erred in not permitting him to present an expert witness on sign language and in not permitting him to cross examine Fields in a meaningful way. At the hearing, appellant sought to establish that he did not understand Fields at the checkpoint by presenting an expert in American Sign Language. He also argues that the suppression court denied him the opportunity to have Fields demonstrate his method of communication.

¶ 7 The record reflects that the cross-examination of Fields was extensive. Further, while the court refused to require Fields to demonstrate *each and every* communication he had with appellant, the court did command Fields to demonstrate the manner in which he introduced himself to appellant. The suppression hearing transcript reveals that Fields's cross-examination was detailed and comprehensive. There was no error by the trial court.

■ ¶ 8 We also find meritless appellant's claim that he should have been permitted to call an expert witness at the suppression hearing. Appellant sought to establish that he did not understand the instructions he received regarding how to perform the field sobriety tests.

■ ¶ 9 Expert testimony aids a fact finder when the subject matter is beyond the experience of the average layman; a court bases its determination of whether expert opinion is appropriate by deciding whether the expert will aid the fact finder in reaching a decision. *Commonwealth v. Pitts,* 740 A.2d 726 (Pa.Super.1999); *Commonwealth v. Petroll,* 696 A.2d 817 (Pa.Super.1997). Appellant claims that an expert was necessary to explain that he did not understand the instructions for the field sobriety tests. However, appellant himself testified that he did not understand the instructions Fields gave him; indeed his alleged lack of capacity to understand Fields was the primary basis of his motion to suppress. Expert testimony on the issue was not only unnecessary for the suppression court, it would have been cumulative as well. We find no error by the suppression court in denying appellant's request for an expert.

■ 10 Appellant next claims that he was entitled to have a certified interpreter present at the checkpoint. Without one, he argues, police could not establish the reasonable grounds necessary to proceed under the implied consent law and, ultimately, obtain his blood alcohol level. Appellant concedes that there is no statutory or case law support for his claim. Further, the only related case on the issue was decided against his favor.

¶ 11 In *Commonwealth v. Mordan,* 419 Pa.Super. 214, 615 A.2d 102 (1992), a panel of this court held that a deaf mute driver was not entitled to an interpreter upon arrest for DUI to insure that he could make a "knowing submission to the breathalyzer test or so that he could understand that he had a right to refuse the breathalyzer test" under 75 Pa.C.S.A. § 1547(a). The *Mordan* court, however, pointed out that under the statute, once Mordan refused the test, he had to be informed about the consequences of his refusal, *i.e.,* loss of his driver's license. In other words, an officer is under no duty to tell a driver that he has a right to refuse. However, once the driver refuses, the officer must inform him of the consequences of the refusal. Section 1547, commonly referred to as the implied consent law, provides that "as a condition of maintaining a driver's license in this Commonwealth, all drivers are subject to the implied consent requirements of the Motor Vehicle Code and must submit to blood and breath tests under appropriate cir-

cumstances." *Commonwealth v. O'Connell,* 521 Pa. 242, 555 A.2d 873, 877 (1989). In the event a driver is asked to submit to chemical testing but refuses to comply, "thereby revoking implied consent," the driver must be informed that his or her driver's license *shall* be suspended for one year. *Mordan,* 615 A.2d at 104; 75 Pa. C.S.A. § 1547(b)(1).

¶ 12 The *Mordan* court recognized that although the consequence of license suspension must be knowing and conscious, there was not a concomitant right to a knowing and conscious *submission* to the test. As a condition of driving on the roads in Pennsylvania, a driver gives his consent to the blood testing and therefore, the driver's submission to the test is considered knowing and conscious. In *Mordan* the court observed:

> The implied consent law contained in Section 1547 of the Vehicle Code states that "[i]t shall be the duty of the police officer to *inform* the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing." 75 Pa.C.S.A. 1547(b)(2). The implied consent law imposes the duty upon the officer only to apprise the motorist of the *consequences* of a refusal to take the breath test. No where does the law require the officer to make certain the motorist understands that he could exercise a right to refuse a breathalyzer tests when he consents to the test. Appellant has a right to a knowing and conscious refusal before his license is suspended, but not a right to a knowing and conscious submission to the breath test.

*Id.* at 108–09.

¶ 13 We apply the same rationale to appellant's claimed right to have an interpreter present during field sobriety tests. A driver's submission to such tests need not be knowing and conscious. Requiring

certified interpreters for every driver who may have difficulty understanding a police officer, whether due to a hearing impairment, language barrier or learning disability, is not only not required by the implied consent law, it is simply not feasible, particularly in the case of DUI investigations where temporal concerns are paramount.

■ ¶ 14 As an alternative basis for his claim, appellant draws our attention to another statutory provision, not part of the Vehicle Code, which addresses the rights of deaf people during interrogation and at criminal proceedings:

> Upon the arrest of any deaf person, and prior to interrogation, the arresting officer shall make available to such person an interpreter who shall be present with such person throughout the interrogation.

> In any criminal proceeding in which a defendant is deaf the court shall appoint an interpreter to assist the defendant throughout the proceeding.

42 Pa.C.S.A. § 8701(a), (b).

¶ 15 We note that the *Mordan* court considered this very provision in reaching its decision that no interpreter was required in that case. The court drew a distinction between the type of contact that occurs at a traffic stop and the type covered by the statute:

> Participation in a breathalyzer test is not the equivalent of an interrogation, nor is it a criminal proceeding. During an interrogation, the objective is to obtain incriminating statements. *"Requiring a driver to perform physical tests or to take a breath analysis test does not violate the privilege against self-incrimination because the evidence procured is of a physical nature rather than testimonial,* and therefore, no *Miranda* warnings are required. If the result of a breathalyzer was considered testimoni-

al evidence or an incriminating statement, then *Miranda* warnings would be required before the test was administered. Moreover, submission to a breathalyzer is not considered a criminal proceeding. The implied consent law codified at section 1547 of the Vehicle Code is not penal in nature and is designed to protect the public by providing an effective means of denying intoxicated motorists the privilege of using the roads.

*Id.* at 105–06 (citations omitted) (emphasis supplied).[2]

¶ 16 While *Mordan* does not address the precise issue presented here, its rationale certainly is applicable to these facts. A certified interpreter simply is not required in order for a police officer to request a deaf mute driver to perform the physical tests that make up field sobriety tests. Appellant has not provided us with statutory or common law support for his propo-

sition and our research has not yielded a case directly on point.[3] In essence, appellant is asking us to expand the law beyond that set out in *Mordan*, which itself was a refusal to broaden the law of implied consent. We decline to do so.

¶ 17 We caution, however, that although a certified interpreter is not required at a sobriety checkpoint, or in all instances where a deaf mute driver is asked to perform field sobriety tests, our holding does not mean that the well-established requirements of a DUI traffic stop may be ignored in the case of a deaf mute driver. Nor does our decision today alter in any manner the prerequisites for administering blood tests in all DUI cases, including those that involve a deaf mute driver.

[T]o administer a blood test under § 1547(a)(1), a police officer need only have reasonable grounds to believe that a person is driving under the influence

2. The *Mordan* court observed that "the driver's license suspension proceeding by the Department of Transportation for a refusal to take a breathalyzer test is an independent civil proceeding separate and distinct from any criminal charges brought against a motorist." *Mordan,* 615 A.2d at 106. The *Mordan* court referred to *Commonwealth, Department of Transportation v. Gaertner,* 138 Pa. Cmwlth. 423, 589 A.2d 272 (1991). In *Gaertner,* a license suspension appeal, the Commonwealth Court found there was substantial evidence that the hearing impaired driver who refused to submit to a blood test did not understand that his refusal would result in the suspension of his license. *See also Landsberger v. Commonwealth, Department of Transportation,* 717 A.2d 1121 (Pa.Commw.1998) (although refusal to submit to chemical testing can be challenged as not knowing or conscious in a license suspension case, deaf driver must have informed police of his hearing impairment or such impairment must have been obvious). Of course, *Gaertner* and *Landsberger* are driver's license suspension cases. They involve a deaf driver's revocation of implied consent and so concern a separate issue, one *Mordan* recognized as different.

This case is not a license suspension case and does not involve revocation of implied consent, making *Gaertner* and its progeny inapplicable here.

3. Much of the jurisprudence in other states is similar to *Mordan* in that it involves the application of the states' implied consent laws and discusses what is required of police in order to inform deaf drivers of their rights under those laws and the consequences of their decision to revoke implied consent. *See, e.g., State v. Piddington,* 241 Wis.2d 754, 623 N.W.2d 528 (2001) (police must use reasonable methods to convey the implied consent warnings to deaf driver); *State v. Bishop,* 264 Kan. 717, 957 P.2d 369 (1998) (holding that an interpreter is not required to inform a deaf driver of the implied consent law's consequences and listing cases in other states reaching the same conclusion). *See also People v. Long,* 296 Ill.App.3d 127, 230 Ill.Dec. 509, 693 N.E.2d 1260 (1998) (lack of certified interpreter did not violate the Americans with Disabilities Act and suppression was not required where officer's written communication and demonstrations constituted effective means of communication).

of alcohol. "Reasonable grounds" has been interpreted to mean "probable cause"; thus, the police officer must have "knowledge of sufficient facts and circumstances, gained through trustworthy information, to warrant a prudent man in the belief that a crime has been committed."

*Commonwealth v. Aiello*, 450 Pa.Super. 302, 675 A.2d 1278, 1280 (1996) (citations omitted). Certainly a trial court would be authorized to find that an officer lacked reasonable grounds to administer a blood test based on the fact that the information known to the officer was not trustworthy due to the driver's hearing impairment. In such a case, the court may find that there were not reasonable grounds to warrant the belief that the driver was intoxicated. But that is not the case here. Fields testified extensively as to the manner in which he communicated with appellant and the reasons upon which he relied for reasonable grounds.

18 The suppression court found that Fields observed sufficient indicators at the initial checkpoint such that further investigation was appropriate. Thereafter, appellant's incomplete or unsatisfactory performance of the field sobriety tests furnished the reasonable grounds necessary for the blood test under the implied consent law. The record supports these findings. Fields first observed that appellant had bloodshot eyes and an odor of alcohol. Thereafter, the officer noticed that appellant staggered when he gave Fields his license. Finally, appellant did not walk a straight line, his raised leg touched the ground four times within a twenty second period and his portable breath test result showed a blood alcohol level in excess of .08. All of these factors made up the officer's "knowledge of sufficient facts and circumstances" and so lent support to the suppression court's finding of probable cause.

¶ 19 We hold that appellant was not entitled to a certified interpreter at the DUI checkpoint and the court properly denied his motion to suppress on that basis.

 ¶ 20 Appellant next claims that the trial court erred in refusing to preclude the results of his blood test based on an alleged discovery violation. On the morning trial was to begin, the Commonwealth informed defense counsel that appellant's blood had been tested at Bon Secours Hospital in Altoona and not Nason Hospital in Roaring Springs, as previously believed. Appellant promptly sought exclusion of the test results, characterizing the Commonwealth's failure to inform him of this fact earlier as a discovery violation warranting exclusion of the evidence.

¶ 21 The trial court found that the Commonwealth did not know that the actual testing site was Bon Secours until the Friday prior to the trial, which began on Monday morning. Apparently, the test was performed by a Nason Hospital technician and the results were recorded on Nason Hospital forms, but the testing was performed at Bon Secours Hospital because the Nason equipment was not working on the date of the test. The technician who performed the test explained that she did not recall this chain of events until Friday when she pulled the records in preparation for trial. In addition to presenting the technician from Nason who performed the test on appellant's blood at Bon Secours, the Commonwealth also offered as a witness a technologist from Bon Secours, who testified to the calibration of the equipment at that facility.

 ¶ 22 We review the trial court's decision on this issue under an abuse of discretion standard. *Commonwealth v.*

*Burke,* 566 Pa. 402, 781 A.2d 1136, 1143 (2001). The Commonwealth's duty under the Rule is to produce information regarding scientific tests and results that are "within its possession or control." Pa. R.Crim.P. 573(B)(1)(e).

¶ 23 The record supports the trial court's conclusion that there was no discovery violation here. As soon as the Commonwealth became aware of the actual testing site, it notified appellant. Appellant offered no evidence that the Commonwealth "withheld" the information from him. In addition, the only remedy appellant sought was preclusion of the evidence; he did not request a continuance to prepare and call additional witness nor did he seek time to engage in further investigation of the issue. Finally, appellant has not established prejudice with regard to this claim; he merely asserts that suppression was the proper remedy for the Commonwealth's discovery error. We find no abuse of discretion on the part of the trial court in denying appellant's request to preclude the blood test results.

¶ 24 Appellant next claims that the evidence was insufficient to support the verdict. When presented with a challenge to the sufficiency of the evidence, we review all the evidence and all reasonable inferences in the light most favorable to the Commonwealth as verdict winner to determine whether all the elements of the crime have been established beyond a reasonable doubt. *Commonwealth v. Devine,* 750 A.2d 899, 903 (Pa.Super.2000).

¶ 25 The record reflects that when appellant appeared at the checkpoint, he exhibited signs of possible intoxication. Thereafter, he failed several field sobriety tests. His blood alcohol level was 1.6, in excess of the legal limit. The evidence was sufficient to sustain the verdict.

¶ 26 Appellant's final claim is a challenge to the weight of the evidence. A motion for a new trial on the grounds that the verdict is against the weight of the evidence concedes that there is sufficient evidence, but nevertheless contends that the trial judge should find the verdict so shocking to one's sense of justice and contrary to the evidence as to make the award of a new trial imperative. *Commonwealth v. Davis,* 799 A.2d 860, 865 (Pa.Super.2002). When reviewing a weight claim, we look to the decision of the trial court to determine whether it abused its discretion in denying relief. *Commonwealth v. Widmer,* 547 Pa. 137, 689 A.2d 211 (1997).

¶ 27 Upon review of the trial court's assessment, we reject appellant's weight claim. The court considered the record and determined that the verdict was in keeping with the evidence presented. We find no abuse of discretion.

¶ 28 Because appellant has raised no issues entitling him to appellate relief, we affirm his judgment of sentence.

¶ 29 Judgment of sentence affirmed.

¶ 30 GRACI, J. files a Concurring Statement.

GRACI, J., Concurring.

¶ 1 I join the thorough and scholarly opinion of the majority. I write separately only to note a recurring problem that I have regularly observed in my short time on the bench. The trial court failed to decide appellant's timely-filed post-sentence motion with in the time prescribed by Rule 720 of the Pennsylvania Rules of Criminal Procedure. Pa.R.Crim.P. 720. The order deciding them was, accordingly, a nullity. *Commonwealth v. Bentley,* 831 A.2d 668, 670–72 (Pa.Super.2003) (citing *Commonwealth v. Santone,* 757 A.2d 963, 966 (Pa.Super.2000)). The clerks of courts

likewise violated Rule 720 by failing to issue an order "forthwith" advising the parties that the motion was deemed denied by operation of law. Pa.R.Crim.P. 720(B)(3)(c). As I observed in *Bentley:*

> Rule 720 is very clear. The trial judge must decide a timely filed post-sentence motion or grant a motion to extend that 120–day limit for 30 days within 120 days of the filing of the post-sentence motion. Pa.R.Crim.P. 720(B)(3)(a). If an extension is properly sought and granted (the rule does not allow *sua sponte* extensions), the post-sentence motion must be decided before the end of the extended period but in no event more than 150 days from the date the motion was filed. *Id.* If the judge fails to decide the motion within the applicable time, the Rule provides, in mandatory terms, "the motion shall be deemed denied by operation of law." Pa.R.Crim.P. 720(B)(3)(a)(b). Any action the judge takes thereafter is a nullity. *Santone,* 757 A.2d at 966. However, the parties are hamstrung until an order is entered as no appeal may be initiated until a final order is entered.
>
> The Rule is clear in this regard, as well. Once a post-sentence motion is deemed denied by operation of law under Rule 720(B)(3)(a) or Rule 720(B)(3)(b), the Rule requires, again in mandatory terms, that "the clerk of courts shall forthwith enter an order on behalf of the court, and shall forthwith a copy of the order by mail or personal delivery to the attorney for the Commonwealth, the defendant(s), and defense counsel that the post-sentence motion is deemed denied." Pa.R.Crim.P.

720(B)(3)(c). It is from that order that any appeal would be perfected by the aggrieved defendant.

> It seems clear that by twice using the word "forthwith," the Supreme Court, in promulgating Rule 720, expected the clerks of court to be vigilant in carrying out their mandatory obligations under this Rule. In my short time on the bench (and during my years as an appellate practitioner before then) it has frequently occurred to me that this rule is honored much more in its breach than in its observance.

*Id.* at 672 (Graci, J., concurring) (footnotes omitted).

¶ 2 Since the clerk of courts did not issue an order denying the motion by operation of law 120 days from the January 14, 2002, filing of Appellant's post-sentence motion, Appellant had no order to appeal until the trial court issued its order denying the motion on September 18, 2002. *Santone,* at 966; *Commonwealth v. Braykovich,* 444 Pa.Super. 397, 664 A.2d 133, 135 (1995); *Commonwealth v. Khalil,* 806 A.2d 415, 418 (Pa.Super.2002). Therefore, the appeal is properly before us as are Appellant's several claims since they were raised either before or during trial or in a timely filed post-sentence motion.[4]

¶ 3 Since all of Appellant's issues are properly before us despite the failings of the trial court and the clerk of courts, I readily join their resolution by the majority.

---

**4.** While two of the claims were included in an amended motion for post-sentence relief filed on May 3, 2002, that motion was filed with leave of court and within the 120–day period allowed for deciding post-sentence motions. The trial court has the discretion to allow the filing of supplemental post-sentence motions. Pa.R.Crim.P. 720(B)(1)(c). If such a supplemental is not decided within the appropriate time limit, it, too, is denied by operation of law.