# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven Fahringer,                               :
                                Appellant       :
                                                :
                        v.                      :    No. 123 C.D. 2020
                                                :    Submitted:  September 11, 2020
Commonwealth of Pennsylvania,                   :
Department of Transportation,                   :
Bureau of Driver Licensing                      :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE ELLEN CEISLER, Judge


<u>OPINION NOT REPORTED</u>


MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                            FILED:  January 5, 2021


     Steven Fahringer (Licensee) appeals from the January 15, 2020 Order of the
Court of Common Pleas of Delaware County (common pleas) dismissing his
appeal from a one-year suspension of his operating privilege imposed by the
Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver
Licensing (DOT) pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S.
§ 1547(b)(1)(i), commonly referred to as the Implied Consent Law.[1]  On appeal,

---

[1] Section 1547(b)(1)(i) of the Vehicle Code provides, in relevant part:

(1) If any person placed under arrest for a violation of [S]ection 3802 [of the
Vehicle Code, 75 Pa.C.S. § 3802 (relating to driving under the influence of
alcohol or controlled substance,)] is requested to submit to chemical testing and

**(Footnote continued on next page…)**

Licensee argues DOT did not meet its burden of sustaining the one-year suspension of Licensee's operating privilege and, therefore, common pleas erred in concluding otherwise. Specifically, Licensee argues DOT did not meet its burden of proving that Licensee was provided a meaningful opportunity to submit to a chemical test of his blood because he could not hear the officer reading the implied consent warnings due to noise and commotion. Upon review, we conclude DOT met its burden to sustain the suspension and, therefore, affirm common pleas.

## I.     Factual Background and Procedure

On August 19, 2018, Licensee was arrested for suspicion of driving under the influence (DUI). Thereafter, by letter with a mailing date of September 4, 2018, DOT suspended Licensee's operating privilege for a period of one year, pursuant to the Implied Consent Law, for Licensee's refusal to submit to a chemical test of his blood at the time of his arrest on August 19, 2018. (Reproduced Record (R.R.) at 58a-61a.) Licensee appealed the suspension to common pleas, which held a hearing on July 30, 2019. Thereafter, on January 15, 2020, common pleas entered an Order denying Licensee's appeal from the operating privilege suspension. Common pleas, also on January 15, 2020, issued an Opinion, therein making 66 findings of fact and conclusions of law. In its

---

**(continued…)**

> refuses to do so, the testing shall not be conducted but upon notice by the police officer, [DOT] shall suspend the operating privilege of the person as follows:
>
> (i)  Except as set forth in subparagraph (ii), for a period of 12 months.
>
> . . . .

75 Pa.C.S. § 1547(b)(1)(i).

2

Opinion, common pleas summarized the testimony presented at the July 30, 2019 hearing, accepting as credible the testimony of Officers James Brawley, Joseph McGivney, and Lawrence Todd of the Haverford Township Police Department. Common pleas found as follows. Officer Brawley testified that on August 19, 2018, at approximately 12:21 a.m., he responded to a report of a person driving through a neighborhood and holding down the horn while driving. (Opinion ¶ 1.) When Officer Brawley arrived at the scene, he observed Licensee exit the vehicle and run to a nearby house. (*Id.* ¶ 4.) Officer Brawley verbally commanded Licensee to stop, and upon making contact with Licensee, Officer Brawley detected the smell of alcoholic beverage emanating from Licensee. (*Id.* ¶¶ 4, 9.) At that point Officers McGivney and Todd arrived at the scene.

Officer McGivney testified that upon making contact with Licensee, Officer McGivney detected the smell of alcoholic beverage emanating from Licensee. (*Id.* ¶ 14.) Officer McGivney eventually administered field sobriety tests, including the horizontal gaze nystagmus, the walk-and-turn, and the one-leg stand, which Licensee did not satisfactorily complete. (*Id.* ¶¶ 18-19.)

Officer Todd testified that after Officer McGivney administered the field sobriety tests, Licensee was arrested on suspicion of DUI, handcuffed, and placed in the back of Officer Todd's patrol car. (*Id.* ¶¶ 23-24.) At that point, Officer Todd stood in the doorway of the patrol car and read Licensee DOT's DL-26B Form. (*Id.* ¶¶ 25-26.) The DL-26B Form from which Officer Todd read was admitted into the record. The warnings outlined in the DL-26B Form, commonly referred to as the *O'Connell*[2] warnings or the Implied Consent Warnings, read as follows:

---

[2] *Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989).

3

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code[, 75 Pa.C.S. § 3802].

2. I am requesting that you submit to a chemical test of blood.

3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of [DUI], your operating privilege will be suspended for up to 18 months. If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee up to $2,000 in order to have your operating privilege restored.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

(R.R. at 62a-63a.) Officer Todd stated that while he read the Implied Consent Warnings, the sirens of the patrol car were not on, there was 1 other officer present at the patrol car but there was a total of 4 to 5 officers at the scene, and there was a group of nearby residents outside their homes about 40-50 feet away from the patrol car. (Opinion ¶¶ 27-28.) Officer Todd further testified that after reading Licensee the Implied Consent Warnings, Licensee stated he did not understand and asked Officer Todd to reread the warnings. (*Id.* ¶ 29.) Officer Todd then read the Implied Consent Warnings a second time at which point Licensee refused to submit to a chemical test of his blood and requested to speak to an attorney.[3] (*Id.* ¶¶ 30-31.) Thereafter, Licensee was transported to the police station.

---

[3] As the Implied Consent Warnings indicate, a licensee is deemed to have refused a chemical test if the licensee requests to speak with an attorney. *O'Connell*, 555 A.2d at 878.

4

Licensee also testified at the hearing. Licensee testified he did not contest the underlying facts. (*Id.* ¶ 37.) He stated that after his arrest he was handcuffed and placed in the back of the patrol car, and, with the door ajar, Officer Todd read something to him twice, but he could not hear Officer Todd due to the noise and commotion. (*Id.* ¶¶ 38-41, 43.) Licensee was not given the DL-26B Form to read himself. (*Id.* ¶ 44.) According to Licensee, he did not understand that by refusing the chemical test of his blood he would lose his operating privilege, that asking to speak to an attorney was tantamount to refusing chemical testing, and that he first learned refusal would result in the suspension of his operating privilege after his arrival at the police station. (*Id.* ¶¶ 46-47, 50.) Licensee admitted to consuming alcoholic beverages that evening but did not believe the level of alcohol in his system affected his ability to comprehend what was happening at the time of his arrest. (*Id.* ¶ 42.)

Based upon the officers' credited testimony, common pleas concluded that after his arrest for suspicion of DUI, Licensee was read the Implied Consent Warnings, and "after being given a meaningful opportunity, [Licensee] knowingly and consciously refused to submit to chemical testing." (*Id.* ¶¶ 65-66.) Thus, common pleas held DOT met its burden to sustain the suspension of Licensee's operating privilege. Licensee appealed common pleas' January 15, 2020 Order to this Court.

After receiving Licensee's statement of errors complained of on appeal, wherein Licensee argued he was not afforded a meaningful opportunity to comply with Officer Todd's request that Licensee submit to a chemical test because he could not hear Officer Todd read the Implied Consent Warnings, common pleas issued an Opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a),

Pa.R.A.P. 1925(a) (1925(a) Opinion). Therein, common pleas concluded "[t]here is nothing in the [r]ecord that [Licensee] ever informed Officer Todd that [Licensee] could not hear [Officer Todd] reading the DL-26[B] Form for any reason whatsoever, including the alleged noise at the scene." (1925(a) Opinion at 10-11.)[4] Accordingly, common pleas concluded the issues raised in Licensee's statement of errors complained of on appeal were without merit.

## II. Discussion

On appeal, Licensee presents a single issue for our review: whether DOT met its burden of demonstrating Licensee was afforded a meaningful opportunity to comply with Officer Todd's request that Licensee submit to a chemical test of his blood when Licensee could not hear the Implied Consent Warnings due to noise and commotion. Initially, before we turn to the parties' arguments, we recognize that in order to sustain the operating privilege suspension against Licensee, DOT bears the burden of demonstrating that Licensee:

> (1) was arrested for DUI by a police officer with reasonable grounds to believe [] [Licensee] was operating a vehicle while under the influence of alcohol or a controlled substance; (2) was requested to submit to chemical testing; (3) refused to submit to chemical testing; and (4) was warned by [an] officer that h[is] license will be suspended if [he] refused to submit to chemical testing.

*Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 280 (Pa. Cmwlth. 2018). "In proving whether [] [L]icensee refused to submit to chemical

---

[4] After initiating the instant appeal, Licensee filed a Motion for Supersedeas asking this Court to stay the suspension of his operating privilege pending final resolution of his appeal. Following argument, the Court granted Licensee's Motion for Supersedeas by Order dated March 19, 2020.

testing, DOT has the burden of showing that [] [L]icensee was offered a meaningful opportunity to comply with" Officer Todd's request that Licensee submit to a chemical test of his blood. *Broadbelt v. Dep't of Transp., Bureau of Driver Licensing*, 903 A.2d 636, 640 (Pa. Cmwlth. 2006). Once DOT demonstrates the foregoing, the burden then shifts to "[L]icensee to prove [he] was physically incapable of performing the test or that h[is] refusal was not knowing and conscious." *Park*, 178 A.3d at 280.

In reviewing this matter, we are mindful that "it is not the province of this Court to make new or different findings of fact." *Reinhart v. Dep't of Transp., Bureau of Driver Licensing*, 954 A.2d 761, 765 (Pa. Cmwlth. 2008). "Our standard of review is whether [common pleas'] findings are supported by [substantial] competent evidence and whether [common pleas] committed an error of law or an abuse of discretion." *Drudy v. Dep't of Transp., Bureau of Driver Licensing*, 795 A.2d 508, 510 n.5 (Pa. Cmwlth. 2002). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Helwig v. Dep't of Transp., Bureau of Driver Licensing*, 99 A.3d 153, 159 (Pa. Cmwlth. 2014). If common pleas' findings are supported by substantial, competent evidence, "we are precluded from overturning those findings." *Reinhart*, 954 A.2d at 765. We must view the evidence in this case in a light most favorable to DOT, "the party that prevailed before" common pleas. *Bradish v. Dep't of Transp., Bureau of Driver Licensing*, 41 A.3d 944, 945 n.3 (Pa. Cmwlth. 2012). With these principles in mind, we turn to the parties' arguments.

Before this Court, Licensee argues he was not afforded a meaningful opportunity to comply with Officer Todd's request that Licensee submit to a

chemical test of his blood because he could not hear Officer Todd read the Implied Consent Warnings. According to Licensee,

> while Officer Todd may have read the [Implied Consent W]arnings, it is clear that he did so in a toxic environment in that he was outside the vehicle with the door ajar while [Licensee] was inside the back of the vehicle with commotion going on outside and slamming noises coming from the back of the vehicle.

(Licensee's Brief (Br.) at 11.) Licensee does not contend that he has a medical issue that would have prevented him from hearing Officer Todd read the Implied Consent Warnings, but rather that the noisy environment at the scene prevented him from hearing Officer Todd. (*Id.* at 14.) Accordingly, Licensee requests we reverse common pleas' January 15, 2020 Order.

DOT responds that Licensee was given a meaningful opportunity to comply with Officer Todd's request that Licensee submit to a chemical test of his blood. While acknowledging Licensee testified before common pleas that he could not hear Officer Todd read the Implied Consent Warnings, DOT contends common pleas "implicitly found [Licensee] not credible." (DOT's Br. at 14.) Because this Court is bound by the credibility determinations of common pleas, DOT requests we affirm common pleas' January 15, 2020 Order.

Pursuant to Section 1547(b)(2)(i) of the Vehicle Code, when arresting a licensee for suspicion of DUI, the arresting officer has a duty to inform the licensee that his "operating privilege will be suspended upon refusal to submit to chemical testing." 75 Pa.C.S. § 1547(b)(2)(i). "Once a police officer provides the [I]mplied [C]onsent [W]arnings to [the licensee], the officer has done all that is legally required to ensure the motorist is fully advised of the consequences of [the licensee's] failure to submit to chemical testing." *Park*, 178 A.3d at 281. We have

8

held that "a reading of the DL-26[B] Form sufficiently apprises the [licensee], either **hearing** or reading it, that if [the licensee] refuses to submit to the chemical test, [the licensee's] operating privileges will be suspended." *Id.* (emphasis added). Common pleas found that Officer Todd twice read Licensee the DL-26B Form. (Opinion ¶¶ 25, 29-30.) This finding is supported by Officer Todd's testimony at the hearing before common pleas. (R.R. at 19a-23a.) However, Licensee contends he could not hear Officer Todd reading the Implied Consent Warnings because of the surrounding noise and commotion. Thus, the issue before us becomes whether Licensee's allegation that he was unable to hear Officer Todd twice read the Implied Consent Warnings demonstrates that he was deprived of a meaningful opportunity to submit to a chemical test of his blood.

Upon review, we agree with common pleas that the record does not support that Licensee was deprived of a meaningful opportunity to submit to a chemical test of his blood because he could not hear Officer Todd reading the Implied Consent Warnings. Before this Court, Licensee alleges that he was unable to hear Officer Todd; however, there are no credited facts to support his position. While Licensee did inform Officer Todd that he could not understand the first time Officer Todd read the Implied Consent Warnings, after Officer Todd read the warnings a second time, there is no clear evidence Licensee informed Officer Todd that he could not hear him. (Opinion ¶¶ 29-30.) Instead, Licensee refused the test and asked for an attorney. (*Id.* ¶ 31.) This is similar to the circumstances in *Landsberger v. Department of Transportation, Bureau of Driver Licensing*, 717 A.2d 1121 (Pa. Cmwlth. 1998), wherein the licensee argued before this Court "that he was unable to knowingly and consciously refuse to submit to chemical testing because he suffer[ed] from a loss of hearing" and that "this loss of hearing

9

prevented him from hearing and understanding" as a state trooper read the Implied Consent Warnings following the licensee's arrest for DUI. *Id.* at 1124. We rejected this argument, reasoning there was no evidence in the record that the licensee "inform[ed] [the state t]rooper [] of his hearing problem, nor was any hearing problem obvious to [the state t]rooper." *Id.*

In the present matter, Licensee, while not claiming a medical condition prevented him from hearing Officer Todd, like the licensee in *Landsberger*, testified he could not hear Officer Todd reading the Implied Consent Warnings. (Opinion ¶ 43.) Absent from the record, though, is credited evidence that Licensee informed Officer Todd that he could not hear Officer Todd read the Implied Consent Warnings. Further, absent from the record is evidence that Officer Todd had a reason to believe Licensee could not hear him. In his brief, Licensee describes the scene of his arrest as a "toxic environment," which prevented him from hearing Officer Todd. (Licensee's Br. at 11.) However, the credited testimony does not indicate such an environment. Officer Todd testified that the patrol vehicles' sirens were not on, that there were 4 to 5 officers at the scene but only 1 other officer was at the patrol car when the Implied Consent Warnings were being read, and that while there were nearby residents outside, they were 40-50 feet away from the patrol car. (Opinion ¶¶ 27-28.) The environment described by Officer Todd is not so obviously noisy that a reasonable person would not be able to hear. Therefore, in the absence of evidence that the scene was so noisy that it should have been obvious to Officer Todd that Licensee could not hear, it was Licensee's responsibility to inform Officer Todd that he could not hear him reading the Implied Consent Warnings. From the credited evidence it is not apparent that Licensee ever informed Officer Todd that he could not hear him.

10

Therefore, we cannot conclude Licensee was denied a meaningful opportunity to comply with Officer Todd's request that he submit to a chemical test of his blood.

### III.     Conclusion

For the foregoing reasons, we cannot conclude Licensee was denied a meaningful opportunity to comply with Officer Todd's request that Licensee submit to a chemical test of his blood.  Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER,** Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven Fahringer,                     :

             Appellant      :

                       :

           v.             :     No. 123 C.D. 2020

                       :

Commonwealth of Pennsylvania,    :

Department of Transportation,      :

Bureau of Driver Licensing        :

## **O R D E R**

**NOW**, January 5, 2021, the Order of the Court of Common Pleas of Delaware County in the above-captioned matter is hereby **AFFIRMED**, and the suspension of Steven Fahringer's operating privilege, imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, is hereby **REINSTATED**.

 

_____

**RENÉE COHN JUBELIRER,** Judge